THE MAYOR AND COMMON COUNCIL OF NEWARK v.
STATE BOARD OF TAXATION AND NORTH JERSEY
STREET RAILWAY COMPANY.

Argued February 26, 1901—Decided June 10, 1901.

The North Jersey Street Railway Company has such an interest in the
soil of the highways over which it passes as is taxable as real
estate.

On *certiorari* in matter of taxation.

Before Justices VAN SYCKEL, GARRISON and FORT.

For the plaintiff, *Herbert Boggs* and *Henry Young.*

For the defendants, *Spencer Weart* and *George T. Werts.*

The opinion of the court was delivered by

VAN SYCKEL, J.    The board of assessment and revision of
taxes of the city of Newark levied an assessment for the year
1900 on the property of the North Jersey Street Railway
Company to the amount of $3,100,000.

On appeal to the state board of taxation the assessment was
reduced, and fixed at the sum of $2,265,979.42 upon the real
and personal property of the said company.

The writ of *certiorari* in this case is prosecuted to test the
legality of the action of the state board.

The conclusions of the state board, and the facts upon
which its decision is based, are set forth in the printed book.

The state board justified the reduction of the assessment
upon the assertion that the trolley company had no greater
right in the street than the traveler upon it on foot or in the
ordinary vehicle, and that it therefore had no taxable interest
in the soil of the street.

The basis adopted for estimating the burden was the cost
of reproduction of the company's rails, stringers, poles, wires,

dynamos, &c., including the cost of labor in laying and erecting the same, deducting fourteen per cent. for depreciation.

In discussing this question to a just conclusion, we must not fail to observe the distinction between the franchise of the company which is taxable by the state for its own purposes, and the property acquired by the corporation to enable it to enjoy its franchise. Such property is, under our laws, taxable by the local authorities. *Pipe Line* v. *Berry,* 24 *Vroom* 212.

The assessment of the Newark board was imposed under the act of April 11th, 1866. *Gen. Stat., p.* 3292.

The second section provides that all real estate, whether owned by individuals or corporations, shall be liable to taxation at its full value.

The third section provides that "the term real estate, as used in the act, shall be construed to include all lands, all water power thereon or appurtenant thereto, and all buildings or erections thereon or affixed to the same, trees and underwood growing thereon, and all mines, quarries, peat and marl beds, and all fisheries."

The underlying question, therefore, in this case is whether the defendant company has an interest in the soil of the highway which is taxable as real estate.

It must be assumed that the laying of the trolley tracks in the highway imposes no additional servitude upon the title of the abutting owner, and that as between the company and the abutting owner nothing is taken from such owner for which he is entitled to compensation. That is now the settled law of this state.

But the question now presented is entirely different; it is a question between the public and the trolley company, and not between the trolley company and the abutting owner on the highway.

As between the public and the trolley company, has the latter an interest in land?

It will not be controverted that the right in the highway which the public authorities have acquired as against the

abutting owner is an interest in land. *Hoboken Land and Improvement Co.* v. *Hoboken,* 7 *Vroom* 540.

As between the city of Newark having such title to the highways and the trolley company, the latter has acquired the right to lay in the soil the foundations for its tracks, to lay rails thereupon and the right to the continuous, uninterrupted occupancy of such part of the public estate. Its poles and its tracks are there permanently, to the exclusion of any other person that might desire to occupy the land, and during the life of the grant the city of Newark will be without power to remove them.

The company has a grant of part of the public estate for its own permanent exclusive use, and that is an interest in real estate; the part must be of the same character as the whole.

The assertion that the right in the soil of the highway acquired and used by the trolley company is no greater than that enjoyed by the public in general is not only in conflict with the evidence of our senses, but is rejected by the adjudged cases on the subject.

If the right is no greater, why may not every individual exercise and enjoy it without an express grant? Take like from like and nothing remains to be the subject of a grant.

The right of the horse railroad company is exclusive and entitles it to exclude from the habitual and continuous use of its tracks all others who attempt to act in competition with it. *Citizens' Coach Co.* v. *Camden Horse Railroad Co.,* 6 *Stew. Eq.* 267, in New Jersey Court of Errors and Appeals.

In *Milhau* v. *Sharp,* 27 *N. Y.* 611, 620, the court, in speaking of a resolution which authorized the laying of a street railway in Broadway, said:

"Upon the acceptance of the resolution, if valid, it became a contract between the parties, binding each to the observance of all its provisions. It was something more than a mere executory contract between the parties. It amounted also to an immediate grant to the defendants of an interest, and it would seem of a freehold interest, in the soil of the streets.

"The rails, when laid, would become a part of the real estate, and the exclusive right to maintain them would be vested in

the defendants. The title to the rails, when attached to the land, and such right in the land as may be requisite for their maintenance, are therefore granted to the defendants by the resolution."

Equally pronounced is the judgment of the Supreme Court of Connecticut. In *City of New Haven* v. *Fairhaven and W. Railroad Co.,* 38 *Conn.* 422, the court said:

"The defendant's property consists in part of rails, sleepers, ties and spikes, so laid into and attached to the soil in the street where the improvement was made as to become a part of the realty. That property so situated is real estate has been repeatedly decided. We entertain no doubt that this ought to be regarded as real estate, and as such liable to assessment like other real estate especially benefited, unless there is something in the charter showing that the legislature did not intend that this species of property should be assessed."

To the like effect are the judicial declarations in the following cases: *Providence Gas Co.* v. *Thurber,* 2 *R. I.* 15; *City of Chicago* v. *Baer,* 41 *Ill.* 306; *Chicago City Railway Co.* v. *Chicago,* 90 *Id.* 573; *Appeal of North Beach and C. Railroad Co.,* 32 *Cal.* 499; *People* v. *Cassity,* 46 *N. Y.* 46; *Smith* v. *Mayor of New York,* 68 *Id.* 552; *People* v. *Commissioners of Taxes,* 82 *Id.* 459.

In the cases of *American Rapid Tel. Co.* v. *Hess,* 125 *N. Y.* 641, and *People* v. *Dolan,* 126 *Id.* 166, the question was whether the companies had an irrevocable franchise to occupy the public streets, and it involved the construction of the New York statute of 1848, chapter 265, as amended by the act of 1853, chapter 471. Those cases held that it was a mere revocable license.

The defendant railway company will not, I presume, contend that such a limitation exists upon its title under the laws of this state.

The decisions in this state are in harmony with the earlier New York cases and other decisions of like import. *Pipe Line* v. *Berry,* 24 *Vroom* 212; *Passaic Water Co.* v. *Paterson,*

27 *Id.* 471; *Newark and H. Traction Co.* v. *North Arlington,* 36 *Vroom* 150.

In the latter case Mr. Justice Collins says: "That the interest of the railway company in the street is real estate cannot be questioned," and he refers with approval to the New York cases.

The English cases accord with the view of our Supreme Court. *King* v. *Bath,* 14 *East* 609; *King* v. *Rochdale Water Works,* 1 *Mau. & Sel.* 634; *Rex* v. *Birmingham Co.,* 1 *Barn. & C.* 506; *King* v. *Brighton Gas Co.,* 5 *Id.* 466; *Electric Tel. Co.* v. *Overseer,* 11 *Hurlst. & G.* 181; *Cory* v. *Bristow,* *L. R.,* 1 *C. P. D.* 54; *affirmed, L. R.,* 2 *App. Cas.* 262.

It is suggested that the public authorities hold their legal title to the highway as trustees for all the people, and that a trustee is without capacity to part with its legal title to what it holds in trust.

There is no such general legal rule making a trustee incapable of transmitting the legal title.

The power of the trustee in that respect depends upon the fact whether it is consistent with, and in due execution of, his trust. It may be that in the execution of the trust he must convey his entire legal estate, or a part of it, or a lesser estate.

In the case of this street railway company, the legislature has authorized the city of Newark to grant to the company the exclusive use of a portion of the soil of the streets; the grant has been made, and our courts have upheld such grant as valid and effectual.

If this railway company was without this legal right, and without the justification based upon it, it would be indictable for maintaining a public nuisance in the highway. No one would doubt that an individual who, without express authority, occupied the street with a like obstruction would be amenable to the criminal law.

In New York, the city owns the fee of the streets, but as the public authorities hold it in trust for public uses as a highway, they have no greater capacity to convey a part of their legal estate than the public authorities in this state

have to convey a part of the lesser estate vested in them in trust.

In my judgment, therefore, the street railway company has such an interest in the soil of the highways over which it is laid as is taxable as real estate.

The action of the state board of taxation was based upon an erroneous legal principle, and should be set aside.

Mr. Justice Fort concurs.

GARRISON, J. (dissenting). The questions upon which unanimity is lacking are—what does a trolley company own in the streets of this state, and how should it be taxed therefor? My colleagues think that it owns "an interest in the soil of the highways over which it passes," and that this is real estate for which it should be taxed at its true value. I think that it owns whatever personal property it has lawfully annexed to the soil of the highway for which it should be taxed at its true value in its permanent environment. This is the point of difference between us.

We agree that it is the settled law of this state that the abutting owner, by reason of the servitude of a surface railway, parts with nothing that he had not previously parted with to the public. We must likewise agree that prior to the imposition of the railway use the estate in the soil of the highway had been so disposed between the private owner and the municipal entity representing the public that in the private owner rested the legal estate to the fee, while in the representative of the public vested the legal estate of an easement sufficiently broad to cover all public uses whatsoever, including that of operating a railway by electricity. Most probably we agree in regarding this easement as a trust to be administered for the benefit of the public. I, at least, so regard it. At this point we diverge. The position taken by the opinion is that the trustee, by permitting one of the public to make a special use of the common right, parts with whatever legal estate is necessary to support such separate easement; whereas, my view is that the trustee permits such use as part of the administra-

tion of its trust and to that end it must retain its legal estate. From the same circumstance from which is implied a partition of the public easement that vested in a single grantee a several interest in the realty, I imply only an executed license to participate in the common easement in an authorized manner. The difference is fundamental and is too far-reaching to be passed over, because, in a given case, its practical bearing upon the question of valuation may be inappreciable. The elaborate reasoning of the opinion delivered in the Court of Errors by Mr. Justice Magie in the case of *Camden Horse Railroad Co.* v. *Citizens' Coach Co.*, 6 *Stew. Eq.* 267, supports the view for which I contend, and is entirely without point if the horse railroad company had at law the easement it sought to have established for it as an equity. The language of Chief Justice Beasley in the same case is likewise irreconcilable with the notion of a partition of the public easement. *Id.* 283.

The opinion of the same court in the case of *Merchants' Insurance Co.* v. *Newark*, 26 *Vroom* 145, was inspired throughout by the same notion. "It is plain," said Mr. Justice Reed, speaking of a street railway mortgage, "that the real estate is an inconsiderable portion of the property mortgage," language which was not only inconsistent with the idea that the property of the company in the streets was real estate, but which actually led to the amendment by the legislature of the Exemption act of 1876 by the insertion of the word "personalty" so as to extend the provisions of that act to mortgages covering the property of such corporations. *Pamph. L.* 1893, *p.* 494; *Gen. Stat., p.* 3319.

Indeed, a line of cases beginning with *Morris and Essex Railroad Co.* v. *Newark*, 2 *Stock.* 352, and *Hinchman* v. *Paterson Horse Railroad Co.*, 2 *C. E. Gr.* 75, and ending with *West Jersey Railroad Co.* v. *Camden and C. Railway Co.*, 7 *Dick. Ch. Rep.* 31, seems to me to have established the opposite of the two propositions upon which the present case is decided, which are that "the right in the soil of the highway acquired by the trolley company" is greater than that enjoyed by the public in general, and that the enjoyment of such a

right supposes such a grant of an exclusive easement that a partition of the public right will be implied. I cite such of these cases as happen to be before me: *Jersey City* v. *Jersey City and Hoboken Railroad Co.*, 5 *C. E. Gr.* 61; *State* v. *Laverack*, 5 *Vroom* 201; *Camden Horse Railroad Co.* v. *Citizens' Coach Co.*, 4 *Stew. Eq.* 525; *Camden Horse Railroad Co.* v. *Citizens' Coach Co.*, 6 *Id.* 267; *Buttelli* v. *Electric Railway Co.*, 30 *Vroom* 302; *Halsey* v. *Street Railway Co.*, 2 *Dick. Ch. Rep.* 380; *Van Horne* v. *Newark Passenger Railway Co.*, 3 *Id.* 332.

It is no part, however, of the object of this memorandum to argue the questions involved, or even to present the reasons for the conclusion to which I have come. The point upon which I differ from the views expressed in the prevailing opinion has been sufficiently indicated.