NORTH JERSEY STREET RAILWAY COMPANY, DEFENDANT IN ERROR, v. THE MAYOR AND ALDERMEN OF JERSEY CITY AND EDWARD FRY, CITY COLLECTOR, PLAINTIFFS IN ERROR.

Argued March 20, 1907—Decided June 17, 1907.

1. Under the supplement of April 11th, 1866, to the General Tax law of 1846 (*Pamph. L.* 1866, *p.* 1078; *Gen. Stat., p.* 3292, *pl.* 62), the franchises of a corporation are not taxable as property.
2. Under the General Tax law of 1903 (*Pamph. L., p.* 394, § 3, ¶ 8), which exempts from taxation under this act (*inter alia*) "all offices and franchises, and all property used for railroad and canal purposes, the taxation of which is provided for by any other law of this state," all offices and franchises are excluded from taxation under this act, whether taxed under other laws or not. The qualifying clause relates only to the last antecedent, to wit, property used for railroad and canal purposes.

On error to the Supreme Court, whose opinion is reported in 44 *Vroom* 481.

For the plaintiffs in error, *George L. Record* and *Robert Carey.*

For the defendant in error, *Frank Bergen, Sherrerd Depue* and *William D. Edwards.*

The opinion of the court was delivered by

PITNEY, J.   In the year 1903, and again in the year 1904, the tax commissioners of Jersey City imposed a property tax upon the right or franchise of the street railway company to operate its railroad in the streets.   Upon writs of *certiorari* prosecuted by the company the Supreme Court set aside these taxes upon the ground that the franchise was taxable under the so-called "Voorhees act" (*Pamph. L.* 1900, *p.* 502), and was therefore exempt from taxation under the General Tax law of 1903 by the terms of paragraph 8 of section 3 of that law.   These judgments of the Supreme Court are now under review.

The two cases (one involving the tax for 1903, the other the tax for 1904) were argued together.   Counsel on both sides have assumed that the Tax act of 1903 applies in both cases, but by its sixty-sixth section (*Pamph. L.* 1903, *p.* 433) this act was made to take effect December 20th, 1903, and its provisions were extended to the taxes assessed in that year only with respect to proceedings had on and after that date. The accompanying express repealer of former acts concerning taxes was likewise made to take effect December 20th, 1903. *Pamph. L.* 1903, *pp.* 436, 446.   Since the tax of 1903 that is now in question was assessed and levied prior to December 20th in that year, its validity must depend upon the law as it stood before the revision of 1903.   This refers us to the supplement of April 11th, 1866, to the General Tax law of 1846. *Pamph. L.* 1866, *p.* 1078; *Gen. Stat., p.* 3292, *pl.* 62.

The language of section 2 of this enactment is: "That all real and personal estate within this state, whether owned by

individuals or by corporations, shall be liable to taxation at the full and actual value thereof on the day in each year when by law the assessment is to commence," &c.   Section 3 declares "that the term 'real estate,' as used in this act, shall be construed to include all lands, all water power thereon or appurtenant thereto, and all buildings or erections thereon or affixed to the same; trees and underwood growing thereon, and all mines, quarries, peat and marl beds, and all fisheries." Section 4 declares "that the term 'personal estate,' as used in this act, shall be construed to include goods and chattels of every description, including steamboats and other vessels, money, debts due and owing from solvent debtors, whether on contract, bond, mortgage or book account; public stocks and stocks in corporations, whether said personal estate be within or without this state."

In the year 1894 the Supreme Court had to deal with the validity of a tax levied by the city of Paterson upon the corporate franchise of a water company that had pipes in the street. *Passaic Water Co.* v. *Paterson,* 27 *Vroom* 471. In support of the tax the act of 1866 was relied upon. In delivering the opinion of the court, Mr. Justice Dixon, after quoting the language of section 2 of that act, proceeded to say: "The form of expression adopted in this enactment suggests, I think, that it was designed to reach only those species of property which are usually owned both by individuals and by corporations, and that other species, such as offices, which are owned by individuals almost exclusively, and franchises, which are owned by corporations almost exclusively, were not within the purview of the law." He found this view strengthened by the language of sections 3 and 4, and he gave a similar construction to section 105 of the General Corporation act of 1875 (*Rev.* 1877, *p.* 196; *Rev. Sup.* 1866, *p.* 170), which provided that the real and personal estate of every corporation should be taxed the same as the real and personal estate of an individual.

Since this decision it has not, so far as we recall, been at any time contended that either the mere franchise of corporate existence or the so-called "local franchises" of corporations

were taxable as property under the act of 1866. An indirect attempt to accomplish the same end was made in *Newark* v. *State Board of Taxation,* 37 *Vroom* 466; 38 *Id.* 246, where the city undertook to assess the physical property of the North Jersey Street Railway Company in the streets, and also to value and tax the so-called "easement" in the street resulting from the franchise granted to the company to main-. tain and operate its railways and collect tolls thereon. The Supreme Court entertained the view that this easement was taxable as property under the act of 1866, but this court reversed on the ground that the so-called easement was a franchise which, under the legislation then existent, was not taxable by the municipality.

The tax of 1903 that is now in question is therefore not to be justified by the Tax law of 1866.

The validity of the tax of 1904 depends upon the proper construction of the General Tax act of 1903 already referred to. *Pamph. L.* 1903, *p.* 394. By its second section it is enacted that "all property, real and personal, within the jurisdiction of this state, not expressly exempted by this act, or excluded from its operation, shall be subject to taxation at its true value under this act," &c. Section 3 declares: "The following property shall be exempt from taxation under this act, namely," and here follow eight numbered paragraphs, the last of which, as printed in the pamphlet laws (*Pamph. L.* 1903, *p.* 396), reads as follows: "(8) All *officers* and franchises, and all property used for railroad and canal purposes, the taxation of which is provided for by any other law of this state." As pointed out by Mr. Justice Swayze, in delivering the opinion of the Supreme Court, the word "officers" is a misprint for "offices," as appears by an inspection of the original act.

The Supreme Court held that the last clause of the paragraph just quoted qualifies "offices and franchises" as well as "property used for railroad and canal purposes," and that franchises are exempted only where their taxation is provided for by some other law. The Voorhees act was pointed out as the "other law" efficient for this purpose. This act (*Pamph.*

*L.* 1900, *p.* 502). has for its title "An act for the taxation of all the property and franchises of persons, corporations, &c., using or occupying public streets, highways, roads or other public places, except municipal [corporations] and corporations taxable under the act entitled 'An act for the taxation of railroad and canal property,' approved April 10th, 1884, or any of the supplements or amendments thereto." Its first section prescribes that all the property, real and personal, and franchises of the persons and corporations indicated by the title of the act, shall be valued, assessed and taxed as thereinafter provided. The act then provides for a valuation by the local assessors of the property of the several companies in the streets and for a tax at local rates upon such property, and further provides for an annual return by the respective companies to the state board of assessors showing the gross receipts of their business, the length of street occupied by them, &c., and for an annual franchise tax of two per centum upon such gross receipts.

We agree with the Supreme Court that this tax on gross receipts is not a property tax, but a license fee imposed as a condition upon which the enjoyment of special privileges in the streets is made to depend.

And for this very reason, if we agreed with the Supreme Court in its construction of paragraph 8 of section 2 of the General Tax law of 1903, we should have difficulty in deeming the taxation imposed by the Voorhees act upon franchises as being the kind of taxation that would work an exemption from taxation under the act of 1903, for the taxation that is imposed by the latter act upon the subjects that are within its operation is *property taxation,* based upon the value of the property. The exemption provided by section 3 is an exemption of *property* from taxation under this act, and the clause of paragraph 8 of that section—"the taxation of which is provided for by any other law of this state"—seems, by the ordinary rules of construction, to refer to *other taxation of the same kind,* viz., the taxation of property as property, and according to its true value as required by the constitution.

The construction of the paragraph in question—"all offices

and franchises, and all property used for railroad and canal purposes, the taxation of which is provided for by any other law of this state"—is not free from difficulty; but upon consideration it is our view that it shows a legislative intent to exclude from taxation under the act of 1903 all offices and franchises, whether taxed under other laws or not.

The following are the principal reasons that have led us to this view:

The frame of the paragraph shows a rhetorical pause after the word "franchises," indicating that "offices and franchises" were dealt with as one group of objects and "property used for railroad and canal purposes" as another group, to the latter of which alone the qualifying clause was intended to pertain. The word "which" is reasonably to be referred to the last antecedent. If the qualifying clause had been intended to apply to all the antecedents in the paragraph the frame of the sentence would more properly have been "all offices, all franchises and all property used for railroad and canal purposes, the taxation of which," &c.

The act of 1903 is manifestly a revision act. Without at all intimating that the legislature may not properly include, in an act intended primarily as a revision, such changes and modifications in the law as to it seems proper, there is, we think, a reasonable presumption that minor changes of verbiage and rearrangement of paragraphs and sections, as found in such a revision, are not necessarily intended to work any radical change in the law. By the decision of the Supreme Court in the case already alluded to (*Passaic Water Co.* v. *Paterson,* 27 *Vroom* 471) it had been declared that neither offices nor franchises were taxable under the act of 1866. No act had as yet been passed (so far as we are aware) for the taxation of offices. If therefore the construction adopted by the Supreme Court be correct, offices are taxable under the act of 1903; a somewhat radical departure from previous legislative policy.

.It is, we think, clear that the decision in 27 *Vroom* was in the mind of the framer of the act of 1903. By mentioning offices and franchises as exempt from taxation under this act

without qualification, the new act conforms in this respect to the old, as construed in that decision. Their exemption from this scheme of taxation does not at all render the act unconstitutional. Treating them as property, they are separate and distinct classes of property, which may be taxed separately or left untaxed, just as they were left untaxed by the act of 1866.

It is easy to find a reason in general policy for leaving offices untaxed by the act of 1903. Any tax imposed upon a public office (and the term "offices" in the act can hardly be deemed to refer to other than public offices) would amount in effect to a reduction of the salary or other compensation allowed by law to the official. The compensation of existing offices (having been fixed before the law had made provision for any tax upon such offices) was presumably established as the net compensation for the respective officials.

As to franchises, these were already subject (not without exception, but in many if not in the majority of important instances) to a governmental exaction; railroad and canal franchises being taxed as property under the act of 1884 as amended in 1888, and many other corporation franchises being subject to license fees either under the Voorhees act (*Pamph. L.* 1900, *p.* 502) or under the act of February 19th, 1901. *Pamph. L., p.* 31. Under the act last mentioned, corporations of this state, other than those which are subject to the payment of a state franchise tax assessed upon the basis of gross receipts, were required to pay an annual license fee or franchise tax upon the basis of the amount of their capital stock issued and outstanding, with a proviso that this should not apply to railway, canal or banking corporations, or to savings banks, cemeteries or religious corporations, or purely charitable or purely educational associations not conducted for profit, or manufacturing or mining corporations at least fifty per centum of whose capital stock issued and outstanding is invested in mining or manufacturing carried on within this state; and with respect to manufacturing or mining companies carrying on business in this state and having less than fifty per centum of their capital invested in such busi-

ness, the assessed value of their property used in such manufacturing or mining was to be deducted from the amount of capital stock issued and outstanding in computing the amount of such license fee or franchise tax. If the act of 1903 was intended to subject franchises to taxation thereunder, unless the taxation thereof was provided for by some other law, it would produce curious results in connection with this act of 1901. If the franchise tax imposed by the latter act were deemed to be taxation within the meaning of the qualifying clause in the act of 1903 (and this must be so if the franchise tax imposed by the Voorhees act is taxation within the same meaning), then all corporations subjected to the franchise tax of the act of 1901 would be exempted from taxation of the franchise as property under the act of 1903, and *vice versa,* with the result (among others) that mining and manufacturing corporations whose capital is invested in business carried on within this state would be required to pay a tax upon the value of their franchise as property, while similar corporations carrying on business out of the state would not be subjected to such tax. On the other hand, if the franchise tax of the act of 1901 should not be deemed to be such taxation as would confer an exemption from the act of 1903, there would result a double imposition (license fee and also property tax) upon all corporations that are subject to the imposition of the act of 1901, as well as upon those subject to the Voorhees act. While not doubting the power of the state to thus impose a license fee upon a franchise and also to tax the same franchise as property, a legislative intent to do so is not lightly to be inferred.

Again, it is reasonable to suppose that if it had been intended to subject offices and franchises to taxation under the act of 1903, some rules would have been prescribed for arriving at their valuation. Certainly the placing of a proper valuation upon either of them is not a simple matter. How is an office to be valued? Some offices are without pecuniary emolument. In some instances the compensation is in the form of fees, the aggregate amount of which is variable and subject to contingencies. Some offices yield a return greater

than could probably be acquired by the same effort in another occupation, other offices are held by the incumbent at a personal sacrifice.   What weight is to be given to the circumstance that one office may be held for a long time, and by a secure tenure, and with a fair prospect for reappointment, while another office may be held subject to the will of the appointing power or subject to good behavior?

With respect to franchises, they are subject to regulation in the public interest, as by requirements for a more adequate and costly service to the public, or by limiting the charges to be made to the public for the service rendered, and the practical value of a franchise is dependent largely upon the presence or absence of such regulations, and upon their stringency when present.

And if offices and franchises were to be taxed as property, in what taxing district should they be taxed?   Both offices and franchises are classed by Blackstone with real estate (although not, perhaps, defined as such), being described as tenements (2 *Bl. Com.* 17), and also as incorporeal hereditaments.   *Id.,* 21, 36, 37.   Is an office to be taxed where the incumbent resides or where the duties of the office are to be performed?   Is a franchise to be taxed at the place where it is exercised, and if exercised in more than one place, then where is it to be taxed?

Of course, it is not intended to intimate that the above queries are insoluble, but only to say that some attempt would probably have been made to solve them if the legislature had intended to bring property of this class within the purview of the act of 1903, and to tax it as property.

We therefore hold that, so far as the scheme of taxation established by the act of 1903 is concerned, offices and franchises are exempted therefrom, whether taxed under any other law or not, the act being in this respect like the act of 1866 as construed in *Passaic Water Co.* v. *Paterson,* 27 *Vroom* 471.

The result is to affirm the judgment of the Supreme Court as to the taxes for both the years 1903 and 1904.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, FORT, HENDRICKSON, PITNEY, REED, TRENCHARD, BOGERT, VREDENBURGH, VROOM, GREEN, DILL, J.J.    12.

*For reversal*—None.