PHILLIPSBURG HORSE CAR RAILROAD COMPANY, PROSE-CUTOR, v. STATE BOARD OF ASSESSORS ET AL.

Argued June 7, 1911—Decided December 19, 1911.

1. Sections 4 and 5 of chapter 290 of the laws of 1906 (*Pamph. L., p.* 644) require the state board of assessors to levy an annual franchise tax upon such proportion of the annual gross receipts of a street railroad corporation as the length of its line in this state upon any street, highway, road, lane or other public place, bears to the length of its whole line.

2. The annual franchise tax which sections 4 and 5 of chapter 290 of the laws of 1906 (*Pamph. L., p.* 644) require the state board of assessors to levy upon such proportion of the annual gross receipts of a street railroad corporation as the length of its line

in this state upon any street, highway, road, lane or other public place, bears to the length of its whole line, is not levied on the gross receipts of the corporation, nor on the business of the corporation, but is merely an excise tax on the franchises of the corporation, viz., the franchise to exist and the franchise to occupy the streets, which is measured in part by the gross receipts, and therefore such franchise tax is not a regulation of interstate commerce, and the act under which it is levied is not in conflict with the clause of the constitution of the United States giving to congress power to regulate commerce among the several states.

On *certiorari.*

Before Justices GARRISON and TRENCHARD.

For the prosecutor, *W. H. Walters, Gilbert Collins* and *Henry J. Steele* (of the Pennsylvania bar).

For the state board of assessors, *Josiah Stryker* and *Edmund Wilson,* attorney-general.

For the town of Phillipsburg, *J. I. Blair Reiley.*

For the township of Pohatcong, *Sylvester C. Smith.*

The opinion of the court was delivered by

TRENCHARD, J.   This writ of *certiorari* brings up for review the assessment of franchise taxes in the year 1910 on the prosecutor, the Phillipsburg Horse Car Railroad Company, under chapter 290 of the laws of 1906.   *Pamph. L., p.* 644. The return shows that, pursuant to section 4 of that act, the prosecutor sent to the state board of assessors a statement showing—*first,* the gross receipts from its business in this state for the year ending December 31st, 1909; *second,* the entire mileage of prosecutor's railroad in this state, and *third,* the mileage of such road upon the streets, highways, roads, lanes or other public places in this state.   It further shows that the tax in question was determined as required by section 5 of the act by calculating four per cent. upon such proportion of its gross receipts as the length of the line upon the streets,

highways, roads, lanes and other public places in this state bears to the length of the whole line. It appears that the prosecutor, in its report to the state board, attempted to apportion the receipts between intrastate and interstate traffic, and insisted that the franchise tax in question should be ascertained by taking four per centum of the receipts derived from intrastate traffic only. It further appears that the only road owned by the prosecutor is located in the township of Pohatcong and the town of Phillipsburg, in this state; that the two divisions of the line meet at Union square in Phillipsburg, near the Delaware bridge; that cars from both divisions cross the Delaware bridge on tracks owned by the bridge company and then proceed on tracks owned by the Easton Transit Company to Centre square in Easton, in the State of Pennsylvania; that the distance from the easterly end of the Delaware bridge to Centre square is forty-nine hundredths of a mile.

It also appears that the prosecutor owns no franchises of any kind in the State of Pennsylvania; that it operates the track located on the Delaware bridge under a lease, paying rent therefor, and that the tracks from the western end of the Delaware bridge to Centre square are operated by the prosecutor under an agreement with the Easton Transit Company, under which the prosecutor pays an annual sum to the latter company. This agreement contains a clause requiring the prosecutor to honor transfers issued by the Easton company, and an agreement by the Easton company to accept over a portion of its line transfers issued by the prosecutor. These transfers in no way affect the gross receipts, as the transfers honored by each company are considered as offsetting those issued by it. It also appears that the prosecutor is a corporation of this state.

By stipulation it appears in effect that seventy per cent. of the cash fares received by the prosecutor were received for the carriage of passengers either from New Jersey to Pennsylvania or from Pennsylvania to New Jersey, and that thirty per cent. of such cash fares were received for the carriage of passengers wholly within the State of New Jersey.

The sole question raised by the reasons for reversal is whether prosecutor can be required to pay a franchise tax of four per cent. on such proportion of its gross receipts as the length its line on the streets, highways, &c., in this state bears to the length of its whole line, or whether before such proportion is taken, the amount of gross receipts received from interstate traffic must first be deducted from the total of gross receipts. Sections 4 and 5 of the act of 1906 (*Pamph. L., p.* 644), under which the tax was assessed, are as follows:

"4. Every street railroad corporation subject to taxation under the provisions of this act shall, on or before the first Tuesday in May in each year, return to the State Board of Assessors a statement showing the gross receipts from its business in this State for the year ending December 31st next preceding, and any such corporation having part of its road in this State and part thereof in another State or States, or having part of its road on private property and part on any public street, highway, road, lane or other public place, shall make a report showing the gross receipts on the whole line, together with a statement of the length of the whole line and the length of the line in this State upon any street, highway, road, lane or other public place, and the franchise tax of such corporation for the business done in this State shall be levied by the State Board of Assessors upon such proportion of its gross receipts as the length of the line in this State upon any street, highway, road, lane or other public place bears to the length of the whole line," &c.

"5. An annual franchise tax upon the annual gross receipts of every street railroad corporation or upon such proportion of such gross receipts as the length of its line in this State upon any street, highway, road, lane or other public place, bears to the length of its whole line, shall be assessed by the State Board of Assessors as follows: For the year nineteen hundred and six, two and one-half per centum upon such gross receipts; for the year nineteen hundred and seven, three per centum; for the year nineteen hundred and eight, three and one-half per centum; for the year nineteen hundred and nine, four per centum; for the year nineteen hundred and ten, four

and one-half per centum; for the year nineteen hundred and eleven, and annually thereafter, five per centum."

These sections plainly require the levying of the tax in the manner pursued by the state board. They require that the franchise tax shall be levied upon such proportion of the gross receipts as the length of the line in this state upon any street, highway, road, lane or other public place, bears to the length of the whole line.

But the prosecutor contends that the act of 1906, as applied to the prosecutor, is a regulation of interstate commerce in conflict with the exclusive powers of congress under the constitution of the United States.

Of course, the determination of this question depends upon the character of the tax imposed and upon what such tax is levied.

What, then, is the character of the tax in question, and upon what is it levied? This question must be considered in the light of the following matters:

(a) The act of 1906, as will be seen by its title, applies only to street railroad corporations using or occupying public streets, &c., in this state. It contains a complete scheme for taxing all the property and franchises of such corporations. Section 2 provides that all property of such companies, whether located upon a street or highway or not, shall be assessed and taxed at local rates as now provided by law. This section evidently applies only to tangible property. Sections 4 and 5 provide, as above stated, for an annual franchise tax upon the annual gross receipts or upon such proportion of such gross receipts as the length of line upon the streets, &c., in this state bears to the length of the whole line. This tax is called a franchise tax wherever referred to in the act. Section 8 provides that the franchise tax and the tax on real and personal property shall be in lieu of all other taxes.

(b) Prior to the passage of the act of 1906, such street railroad corporations were taxed under chapter 195 of the laws of 1900. *Pamph. L., p.* 502. That act, so far as street railroads were concerned, provided for substantially the same system of taxation as is provided for by the act of 1906, except

that the earlier act took the entire gross receipts from the business of the street railroad company in the State of New Jersey and contained no provision for apportionment as is contained in section 5 of the act of 1906. The act of 1900 also provided that the taxes imposed thereunder should be in lieu of all other taxes. Prior to the enactment of the act of 1900, street railroad corporations were taxed under the general provisions of section 4 of chapter 59 of the laws of 1884 (*Pamph. L., p.* 235), which provided "that all other corporations incorporated under the laws of this state, and not hereinbefore provided for, shall pay a yearly license fee or tax of one-tenth of one per cent. on the amount of the capital stock of such corporations." That was a tax upon the franchise of the corporation to exist as a corporation. *Marsden Company* v. *Assessors,* 32 *Vroom* 461. It appears, therefore, that the tax measured by gross receipts which was first imposed on street railway companies under the act of 1900, and continued by the act of 1906, was imposed in lieu of the tax upon the franchise to exist as a corporation assessed under the act of 1884.

(c) The act of 1906 applies only to corporations which have a franchise to occupy the public streets, and the act of 1900 is similar to it in this respect. The fact that the tax is calculated upon the proportion of gross receipts which the mileage of the tracks of the corporation on public streets, &c., in this state bears to its entire mileage, thus excluding mileage on private rights of way, as well as mileage out of the state, shows that it was intended by the legislature to consider, in providing for this tax, the value of the franchise of the company to occupy the streets, &c., with its tracks, and to impose a tax upon such franchise which should bear a relation to its value. This is indicated by section 7, which provides that money payable by a street railroad company to a taxing district, pursuant to any contract, "shall be paid notwithstanding this act," but that the amounts so paid shall be deducted from the tax assessed under the act and apportioned to such district under its provisions. Moneys paid under such contracts are usually agreed to be paid in consideration of the granting by the municipality of the franchise to occupy its streets.

Such provision is tantamount to an expression that the privilege upon which this tax is levied and the privilege for which such moneys are paid under such contracts are, to some extent, at least, similar.

(d) Section 6 of the act provides for an apportionment of the franchise taxes in proportion to the value of the tangible property of any such corporation located in or upon any public street, &c., and for the collection of such taxes by such taxing districts. It provides that this tax so assessed and certified shall be a first lien on the property and franchises of such corporations in such taxing district until paid; and that the proceedings available for the collection of other taxes shall be "applicable to the collection of the franchise tax hereby authorized."

Since the tax in question was imposed in lieu of the prior tax under the act of 1884 on the franchise to exist as a corporation, and since it is imposed only on corporations that have a franchise to occupy the public streets, and further, since its amount is made to depend upon the proceeds from the use of such streets and thus bears a relation to the value of the franchise, the conclusion is irresistible that this tax is levied on both the franchise to exist and the franchise to occupy the streets. It is the result of an effort by the legislature to measure the value of the franchises of the corporation and to tax such value by a method fair at once to the corporation and to the state. The tangible property is taxed at a fair valuation without regard to the franchises, and the tax on the franchises is measured by the gross receipts and the proportion of the road occupying public streets, &c. We hold, therefore, that the tax in question is not levied on the gross receipts of the corporation nor on the business of the corporation, but is merely an excise tax on the franchises of the corporation, viz., the franchise to exist and the franchise to occupy the streets, which is measured in part by the gross receipts.

In *Newark* v. *State Board of Taxation*, 38 *Vroom* 246, the Court of Errors and Appeals held that, though the franchise of a street railroad company to maintain and occupy its road over the public highways was property and taxable as such,

yet under legislation in force at that time, by which was undoubtedly meant the act of 1900, the right to tax it had been reserved by the state to itself, through its state board of assessors, and not delegated to the several municipalities through which the company's road passes.

In *North Jersey Street Railway Co.* v. *Jersey City,* 45 *Vroom* 761, the Court of Errors and Appeals, in speaking of the tax assessed under the act of 1900, said:

"We agree with the Supreme Court that this tax on gross receipts is not a property tax, but a license fee imposed as a condition upon which the enjoyment of special privileges in the streets is made to depend."

Since the tax levied upon the prosecutor is a tax upon the prosecutor's franchises and not upon its business nor upon its receipts therefrom, it in no way conflicts with the clause of the United States constitution empowering congress to regulate commerce among the states, and cannot be said to be in any sense a tax upon interstate commerce.

It was held by this court, in *Lumberville Bridge Co.* v. *Assessors,* 26 *Vroom* 529, that a tax amounting to one-tenth of one per cent. on the entire capital stock of the company, imposed upon the bridge company, was not void as an interference with interstate commerce, although the company was incorporated by the concurrent acts of the legislatures of New Jersey and Pennsylvania for the purpose of building and operating a toll bridge over the Delaware river between those two states. In that case Mr. Justice Garrison classifies the cases in which state legislation has been set aside as an unwarrantable regulation of interstate commerce into three general classes:

*First.* Those in which the state law has made discriminations adversely to other states.

*Second.* Those in which the impost was upon the subject of transportation.

*Third.* Those in which the state tax was in effect a tax upon the business engaged in interstate commerce, because imposed upon its agencies.

In the opinion a number of cases are cited in which state legislation has been sustained by the United States Supreme Court, although incidentally affecting interstate commerce. Among others are *Maine* v. *Grand Trunk Railway Co.,* 142 *U. S.* 217, and *Ficklen* v. *Shelby County,* 145 *Id.* 1.

In *Tidewater Pipe Co.* v. *Assessors,* 28 *Vroom* 516, a question very similar to the question involved in the case at bar was decided by this court. The Tidewater Pipe Company, for the purpose of taxation, was considered a corporation within the meaning of our Corporation Tax act. Its entire business consisted of the transportation of oil from points without to points within New Jersey, and of matters incidental to such transportation, and was admitted to be engaged solely in interstate commerce. A tax was levied on the corporation under section 4 of the act of 1884 (*Pamph. L., p.* 234), and was designated by the statute as "an annual tax for the use of the state by way of a license for its corporate franchises," and consisted of eight-tenths of one per centum of the gross amount of its receipts from the transportation of oil in this state during the year preceding the levy. The gross amount was fixed by the statute as such proportion of its gross receipts for transportation of oil over its whole line, as the length of its line in this state bears to the length of its whole line. It was insisted by the prosecutor that the imposition of the tax was an unconstitutional interference with interstate commerce. On this question the court said:

"The question thus raised is one to be decided according to the views of the Supreme Court of the United States. Those views have been recently expressed in a case which appears to be on all fours with the present case. I refer to *Maine* v. *Grand Trunk Railway Co.,* 142 *U. S.* 217, which is so apposite for present purposes as to preclude the need or the utility of further investigation."

This case was subsequently affirmed by the Court of Errors and Appeals on the opinion in the court below. 30 *Vroom* 269.

In *Maine* v. *Grand Trunk Railway Co., supra,* an act of the legislature of the State of Maine provided that the buildings

of every railroad corporation, whether within or without the located right of way, and its lands and fixtures outside of the located right of way should be subject to taxation by the several cities and towns in which such buildings, lands, &c., were situated, as other property therein was taxed, and further provided that every corporation operating any railroad in that state should pay for the use of the state an annual excise tax for the privilege of exercising its franchise in that state, which, with the tax above mentioned, should be in lieu of all taxes upon such railroad, its property and stock. The amount of the franchise tax was ascertained by taking the gross transportation receipts for the year next preceding the levy of the tax, and dividing such transportation receipts by the number of miles of the railroad operated. In the case of railroads lying partly within and partly without the state, or operated as a part of a line or system extending beyond the state, the entire gross receipts were divided by the entire number of miles of such line or system and then multiplied by the number of miles of railroad operated within the state. It will be seen that this method was substantially the same as that followed in the statute now under consideration in the case at bar. The Grand Trunk Railway Company, the defendant in the case above mentioned, was a corporation created under the laws of Canada. Its railroad was constructed partly within and partly without the State of Maine. The opinion of the court, delivered by Mr. Justice Field, held that the tax in question was an excise tax upon the defendant corporation for the privilege of exercising its franchises within the State of Maine.

As has been stated, this case has been cited by this court in the case of Lumberville Bridge Co. *v.* Assessors and Tidewater Pipe Co. *v.* Assessors, and by the Supreme Court of the United States in many cases, among which are *Ficklen* v. *Shelby County,* 145 *U. S.* 23; *Galveston, &c., Railroad Co.* v. *Texas,* 210 *Id.* 217, 224.

In *Ficklen* v. *Shelby County, supra,* Mr. Chief Justice Fuller said:

"Again, in *Maine* v. *Grand Trunk Railway Co.*, 142 *U. S.* 217, we decided that a state statute which required every corporation, person or association operating a railroad within the state to pay an annual tax for the privilege of exercising its franchise therein, to be determined by the amount of its gross transportation receipts, and further provided that when applied to a railroad lying partly within and partly without a state, or to one operated as a part of a line or system extending beyond the state, the tax should be equal to the proportion of the gross receipts in the state, to be ascertained in the manner provided by the statute, did not conflict with the constitution of the United States. It was held that the reference by the statute to the transportation receipts and to a certain percentage of the same, in determining the amount of the excise tax, was simply to ascertain the value of the business done by the corporation, and thus obtain a guide to a reasonable conclusion as to the amount of the excise tax which should be levied. In this respect the tax was unlike that levied in *Philadelphia Steamship Co.* v. *Pennsylvania*, 122 *U. S.* 326, where the specific gross receipts for transportation were taxed as such, taxed 'not only because they are money, or its value, but because they were received for transportation.' "

In *Galveston, &c., Railroad Co.* v. *Texas, supra,* the decision in *Philadelphia and Southern Mail Steamship Co.* v. *Pennsylvania,* 122 *U. S.* 326, is followed, and the Maine case is distinguished.

The distinction drawn in this case rests upon the character of the tax imposed. In a review of the Maine case in the case last cited, Mr. Justice Holmes, speaking of the Maine case, uses the following language:

"In *Maine* v. *Grand Trunk Railway Co.*, 142 *U. S.* 217, 'an annual excise tax for the privilege of exercising its franchise,' was levied upon everyone operating a railroad in the state, fixed by percentages, varying up to a certain limit, upon the average gross receipts per mile multiplied by the number of miles within the state when the road extended outside. This seems at first sight like a reaction from the Philadelphia and Southern Mail Steamship Company case. But it may not

have been.   The estimated gross receipts per mile may be said to have been made a measure of the value of the property per mile.   That the effort of the state was to reach that value and not to fasten on the receipts from transportation as such, was shown by the fact that the scheme of the statute was to establish a system.   The buildings of the railroad and its lands and fixtures outside of its right of way were to be taxed locally, as other property was taxed, and this excise with the local tax were to be in lieu of all taxes.   The language shows that the local tax was not expected to include the additional value gained by the property being part of a going concern. That idea came in later.   The excise was an attempt to reach that additional value.   The two taxes together fairly may be called a commutation tax.   See *Ficklen* v. *Taxing District of Shelby County,* 145 *U. S.* 1, 23 ; *Postal Telegraph Cable Co.* v. *Adams,* 155 *Id.* 688, 697 ; *McHenry* v. *Alford,* 168 *Id.* 651, 670, 671."

We are of opinion that the provisions of the act of 1906, now under consideration, bring the case at bar within the ruling of the United States Supreme Court in the case of *Maine* v. *Grand Trunk Railway Co., supra.*   It is apparent from the provisions of the act that the tax in question is levied on the franchises of the corporation, and that the reference to the gross receipts is made for the purpose of estimating the value of such franchises; that the value of a franchise to occupy the public streets rests largely upon the extent to which such franchise is used, and that the gross receipts are an index to this user.   Such franchise tax, therefore, is not a regulation of interstate commerce, and the act under which it is levied is not in conflict with the clause of the constitution of the United States giving to congress power to regulate commerce among the several states.

The tax under review will be affirmed, with costs.