## GALVESTON, HARRISBURG AND SAN ANTONIO RAILWAY COMPANY *v*. STATE OF TEXAS.

### ERROR TO THE SUPREME COURT OF THE STATE OF TEXAS.

No. 207.   Argued April 21, 22, 1908.—Decided May 18, 1908.

The statute of Texas of April 17, 1905, c. 141, imposing a tax upon railroad companies equal to one per cent of their gross receipts is, as to those companies whose receipts include receipts from interstate business, a burden on interstate commerce and as such violative of the commerce clause of the Federal Constitution. *Philadelphia & Southern Mail S. S. Co.* v. *Pennsylvania*, 122 U. S. 326 followed; *Maine* v. *Grand Trunk Railway Co.*, 142 U. S. 217, distinguished, and held that the latter case did not overrule the former.

Neither the state courts nor the legislatures, by giving a tax a particular name, or by the use of some form of words, can take away the duty of this court to consider the nature and effect of a tax, and if it bears upon in-

terstate commerce so directly as to amount to a regulaticn it cannot be saved by name or form.

97 S. W. Rep. 71, reversed:

THE facts are stated in the opinion.

*Mr. Maxwell Evarts* and *Mr. Hiram M. Garwood,* with whom *Mr. Robert S. Lovett* was on the brief, for plaintiffs in error:

The tax to be levied directly upon the receipts from interstate and foreign transportation is a regulation of interstate and foreign commerce, contrary to the commerce clause of the Federal Constitution.

It cannot avail that the tax is arbitrarily declared an occupation tax. Constitutional limitations cannot be broken down or circumvented by the form in which a thing is done or attempted. The judiciary will look through the form to the substance and will invalidate any legislative act which in its substance is a breach of constitutional right.

To tax the occupation of an importer is to tax the import. *Brown* v. *Maryland,* 12 Wheat. 419. To tax the income of United States securities is to tax the securities themselves. *Western* v. *Charleston,* 2 Pet. 449. To tax an income from an official position is to tax the office itself. *Dobbins* v. *Erie County Commissioners,* 16 Pet. 435. To tax a bill of lading is to tax the thing transported and the receipts therefrom. *Almy* v. *California,* 24 How. 169. A tax upon interest is a tax upon the bond. *Railroad Co.* v. *Jackson,* 7 Wall. 262. A tax upon the auctioneer is a tax upon the goods sold. *Cook* v. *Pennsylvania,* 97 U. S. 566. To tax the income of personal property and the rental of lands is to tax the property from which the income is derived. *Pollock* v. *Farmers' Trust Co.,* 157 U. S. 429. To compel the carrier to give information relative to an interstate transit is to burden and regulate interstate commerce. *Central of Georgia Ry. Co.* v. *Murphey,* 196 U. S. 194. In like manner to tax the receipts from interstate commerce is to regulate that commerce itself. While at an early stage of the decisions of this court it was thought that

.the power of Congress to regulate commerce among the States .was concurrent with that of the State,. it has become universally accepted doctrine that the power of Congress to regulate .commerce among the States is exclusive. *Philadelphia Steamship Co.* v. *Pennsylvania*, 122 U. S. 326; *Telegraph Co.* v. *Texas*, 105 U. S. 460; *Pickard* v. *Pullman Co.*, 117 U. S. 34; *Fargo* v. *Michigan*, 121 U. S. 230; *W. U. Tel. Co.* v. *Pennsylvania*, 128 U. S. 39; *Ratterman* v. *W. U. Tel. Co.*, 127 U. S. 411; *Western Union Tel. Co.* v. *Alabama*, 132 U. S. 472; *Postal Tel. Co.* v. *Adams*; 155 U. S. 698.

It is contended that the *Steamship case* is not strictly applicable because in that case all of the receipts were interstate and foreign, while here, part of the receipts are domestic. This variance in the facts does not affect the principle or the result as a tax on interstate receipts cannot be sustained because the same tax is levied at the same time upon state receipts. *State Freight Tax Case*, 15 Wallace, 232; *W. U. Tel. Co.* v. *Texas*, 105 U. S. 460; *Pickard* v. *Pullman Co.*, 117 U. S. 34; *W. U. Tel. Co.* v. *Alabama*, 132 U. S. 477; *Allen* v. *Pullman Co.*, 191 U. S. 171; *Leloup* v. *Mobile*, 127 U. S. 648; *Caldwell* v. *North Carolina*, 187 U. S. 622; *Brenan* v. *Titusville*, 153 U. S. 289; *Asher* v. *Texas*, 128 U. S. 132; *Robbins* v.*Shelby Taxing District*, 120 U. S. 489; *Norfolk & Western Ry. Co.* v. *Sims*, 191 U. S. 441; *Crutcher* v. *Kentucky*, 141 U. S. 47; *Stockard* v. *Morgan*, 185 U. S. 37.

If it should be held, however, that the tax here involved is an occupation tax, there remain four propositions, three of which at least must be decided against the contention of plaintiffs in error before this tax can be sustained.

: 1. An occupation, license, or privilege tax cannot be laid on the occupation or business of engaging in interstate commerce, although at the same time such a tax be laid on the same party engaged in intrastate commerce.

. 2. Assuming that the tax is imposed only on the intrastate occupation, the same is invalid, because:

The State in levying a tax on a state occupation cannot base

the same in whole or in part on the earnings of an interstate occupation, as the State cannot, in arriving at the amount of the tax, take as a basis those things which the State has no power to tax, for this would accomplish indirectly what the State may not do directly.

The assessment of the tax at a sum equal to one per cent of the gross interstate earnings in effect is an impediment and serious obstruction to, and therefore a burden upon interstate commerce, as the carrier, in fixing his interstate rate, will necessarily consider that from the earnings of every pound carried, he must give to the State one per cent. If it be admitted that the State can so demand one per cent, it may demand any larger percentage, and under this form of taxation the State may without practical limit, regulate the interstate commerce even to the extent of suppressing the same.

3. Though a tax be levied on the state occupation, where the burden of the same will necessarily fall on the interstate occupation and the party is not at liberty to decline the state occupation, such a tax cannot stand.

4. The tax is laid on both the occupation of doing a state and interstate business. There is no room left for construction upon this proposition. *Steamship Co.* v. *Port Wardens,* 6 Wall. 31; *Welton* v. *Missouri,* 91 U. S. 281; *Steamship Co.* v. *Pennsylvania,* 122 U. S. 346; *Stockard* v. *Morgan,* 185 U. S. 27, 37; *Robbins* v. *Shelby Taxing District,* 120 U. S. 496; *Corson* v. *Maryland,* 120 U. S. 502; *Ratterman* v. *Western Union Tel. Co.,* 127 U. S. 411; *L. & N. R. R. Co.* v. *Eubank,* 184 U. S. 27; *Wabash Ry. Co.* v. *Illinois,* 118 U. S. 557. Cases cited by defendant in error, viz., *Gross Receipts Tax Case,* 18 Wall. 206; *Maine* v. *Grand Trunk Ry. Co.,* 142 U. S. 217, discussed and distinguished.

*Mr. Robert Vance Davidson,* Attorney General of the State of Texas, and *Mr. William Edward Hawkins,* for defendant in error:

The tax prescribed by chap. 141 of the acts of the twenty-

ninth legislature of Texas is an occupation tax. *Maine* v. *Grand Trunk Railway,* 142 U. S. 217; *State Railroad Tax Cases,* 92 U. S. 603; *State Tax on Railway Gross Receipts,* 15 Wall. 284; *Osborne* v. *Mobile,* 16 Wall. 479; *Nathan* v. *Louisiana,* 8 How. 73; Constitution of Texas, Art. 8, §§ 1, 2, 9 and 17; *State of Texas* v. *G., H. & S. A. Ry. Co.,* 97 S. W. Rep. 71; *Albrecht* v. *State,* 8 Texas App. 217; *Languille* v. *State,* 4 Texas App. 322, and cases cited; *State* v. *Stevens,* 4 Texas, 137; *Aulanier* v. *Governor,* 1 Texas, 664; *State* v. *Bock,* 9 Texas, 369; *Thompson* v. *State,* 17 Texas App. 258; *Texas Banking and Ins. Co.* v. *State,* 42 Texas, 637; *Galveston County* v. *Gorham,* 49 Texas, 289; *Blessing* v. *Galveston,* 42 Texas, 660; *Fahey* v. *State,* 27 Texas App. 161; *Higgins* v. *Rinker,* 47 Texas, 396; *Pullman Co.* v. *State,* 64 Texas, 274; *Cumberland R. R. Co.* v. *State,* 52 L. R. A. 756; *Capital City Water Co.* v. *Board of Revenue,* 107 Alabama, 303; Cooley on Taxation (3d ed.), 1094 *et seq.*

An occupation tax is peculiar in its character. It is not a tax upon property, but upon the pursuit which a man follows in order to acquire property. *Appeal of Bangor,* 109 Pa. St. 89.

A franchise is a particular privilege conferred by law, emanating from the sovereign power and vested in individuals, or a corporation. Webster's International Dictionary; 3 Words and Phrases, pp. 2929–2937.

A franchise to be a corporation is distinct from a franchise acquired and exercised by a corporation, to own, maintain and operate a railway. *People* v. *Commissioners,* 174 N. Y. 417.

Individuals, whether alone or when associated with others, have an inherent right to pursue some lawful occupation, subject, however, to such taxes as the State may impose. But a corporation is wholly a creature of the law in so far as its right to exist is concerned. Such right of a mere existence is a primary franchise, vesting, as we have seen, in the individuals who organize the corporation.

To the corporate entity so created the State grants the right

which the individual, or the association of individuals, inherently enjoy; viz., the right to do business within the State, or, in other words, to pursue a given occupation. *Memphis & Little Rock R. R. Co.* v. *Commissioners*, 112 U. S. 609; *Horn Silver Mining Co.* v. *New York*, 143 U. S. 313; *People* v. *State Board*, 174 N. Y. 417; *Iron Silver Mining Co.* v. *Cowie*, 31 Colorado, 450; 3 Words and Phrases, 2929–2937.

The legislature of Texas has a perfect right to require those owning, operating, managing or controlling a railroad. lying in whole or in part, within this State, to pay, not only an *ad valorem* tax, but also a tax for the privilege of the continued exercise of their franchises to do business within this State.

The mileage basis of apportionment, as applied by the Texas statute to the gross receipts of lines of railroad lying partly within and partly without the State of Texas, is constitutional, valid and fair, and correctly and justly determines what proportion of the entire receipts of such line of railroad results from business done within the State of Texas. *Michigan Central Ry. Co.* v. *Powers*, 201 U. S. 288; *Adams Express Co.* v. *Kentucky*, 166 U. S. 171, 180; *W. U. Tel. Co.* v. *Taggart*, 163 U. S. 1; *W. U. Tel. Co.* v. *Massachusetts*, 125 U. S. 552; *Cleveland &c. Ry. Co.* v. *Backus*, 154 U. S. 439; *Central Pacific Ry. Co.* v. *California*, 162 U. S. 91; *Maine* v. *Grand Trunk Ry.*, 142 U. S. 217; *Pittsburg &c. Ry. Co.* v. *Backus*, 154 U. S. 421; Cooley on Taxation (3d ed.), 163, 164.

A statute may affect interstate commerce without amounting to a regulation thereof. *McLean* v. *Denver & Rio Grande R. R. Co.*, 203 U. S. 50; *Ficklen* v. *Shelby Co.*, 145 U. S. 21; *Ouichita Packet Co.* v. *Aiken*, 121 U. S. 444; *State Tax on Railway Gross Receipts*, 15 Wall. 293; *Sherlock* v. *Alling*, 93 U. S. 99; *Smith* v. *Alabama*, 124 U. S. 465; *Western Union Tel. Co.* v. *James*, 162 U. S. 656.

The tax prescribed is not, in substance or effect, a tax, or a burden upon, or a regulation of interstate commerce. It is not upon articles of or receipts from interstate commerce, and such receipts are immaterial except in so far as they enter into

and become a part of the measure by which the amount of the tax is determined. *Maine* v. *Grand Trunk Ry. Co.*, 142 U. S. 217; *State Tax on Railway Gross Receipts*, 15 Wall. 284; *Wisconsin & Michigan Ry. Co.* v. *Powers*, 191 U. S. 387; *Delaware Ry. Tax Case*, 18 Wall. 206; *Erie Ry. Co.* v. *Pennslyvania*, 21 Wall. 492; *New York, Lake Erie & Western Ry. Co.* v. *Pennsylvania*, 158 U. S. 431; *McHenry* v. *Alford*, 168 U. S. 651; *State Railroad Tax Cases*, 92 U. S. 575; *Nathan* v. *Louisiana*, 8 How. 73; *Home Ins. Co.* v. *New York*, 134 U. S. 594; *Western Union Tel. Co.* v. *Taggart*, 163 U. S. 1; *Horn Silver Mining Co.* v. *New York*, 143 U. S. 315; *New York State* v. *Roberts*, 171 U. S. 664, and cases cited; *Pacific Express Co.* v. *Siebert*, 142 U. S. 350; *Lacy* v. *Packing Co.*, 200 U. S. 226; *Cumberland Railroad Co.* v. *State*, 52 L. R. A. 764.

The tax here levied is not "on" gross receipts, but "equal to" a given percentage "calculated on the gross receipts."

Lord Eldon held: Where the salesman has an amount of money equal to one-tenth of the profits this gives him no action of account, and, therefore, he is not a partner; but where he is to receive one-tenth of the profits, this gives him an action of account, and, therefore, makes him a partner. Parsons on Contracts (8th ed.), 160, citing Lord Eldon.

The word "equal," as used in the statute, means "having the same magnitude, the same value." Webster's International Dictionary.

"Equal" implies, not identity, but duality; the use of one thing as the measure of another. It is so understood in the plain language of the people. *Little Rock & M. R. Co.* v. *St. Louis, I. M. & S. Ry. Co.*; 59 Fed. Rep. 400; *Kentucky & I. Bridge Co.* v. *Louisville & N. R. R. Co.*, 37 Fed. Rep. 624; *Little Rock & M. R. Co.* v. *St. Louis, I. M. & S. Ry. Co.*, 63 Fed. Rep. 775.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is an action against certain railroads to recover taxes and penalties. The Supreme Court of the State held the penal-

ties to be void under the state constitution, but upheld the tax. 97 S. W. Rep. 71. The railroads bring the case here mainly on the ground that the law upon which the action is based is an attempt to regulate commerce among the States.

The act in question is entitled "An Act imposing a tax upon railroad corporations . . . and other persons . . . owning . . . or controlling any line of railroad in this State . . . equal to one per cent. of their gross receipts . . . and repealing the existing tax on the gross passenger earnings of railroads." It proceeds in § 1 to impose upon such railroads "an annual tax for the year 1905, and for each calendar year thereafter, equal to one per centum of its gross receipts, if such line of railroad lies wholly within the State." In § 2 a report, under oath, of "the gross receipts of such line of railroad, from every source whatever, for the year ending on the thirtieth day of June last preceding," and immediate payment of the tax "calculated on the gross receipts so reported," are required. The comptroller is given power to call for other reports, and is to "estimate such tax on the true gross receipts thereby disclosed," etc. The lines of the railroads concerned are wholly within the State, but they connect with other lines, and a part, in some instances much the larger part, of their gross receipts is derived from the carriage of passengers and freight coming from, or destined to, points without the State. In view of this portion of their business, the railroads contend that the case is governed by *Philadelphia & Southern Mail Steamship Co.* v. *Pennsylvania*, 122 U. S. 326. The counsel for the State rely upon *Maine* v. *Grand Trunk Ry. Co.*, 142 U. S. 217, and maintain, if necessary, that the later overrules the earlier case.

In *Philadelphia & Southern Mail S. S. Co.* v. *Pennsylvania*, 122 U. S. 326, it was decided that a tax upon the gross receipts of a steamship corporation of the State, when such receipts were derived from commerce between the States and with foreign countries, was unconstitutional. We regard this decision as unshaken and as stating established law. It cites

the earlier cases to the same effect. Later ones are *Ratterman* v. *Western Union Telegraph Co.*, 127 U. S. 411; *Western Union Telegraph Co.* v. *Pennsylvania*, 128 U. S. 39; *Western Union Telegraph Co.* v. *Seay*, 132 U. S. 472. See also *Pullman's Palace Car Co.* v. *Pennsylvania*, 141 U. S. 18, 25; *Ficklen* v. *Taxing District of Shelby County*, 145 U. S. 1, 22; *New York, Lake Erie & Western R. R. Co.* v. *Pennsylvania*, 158 U. S. 431, 438; *McHenry* v. *Alford*, 168 U. S. 651, 670, 671; *Atlantic & Pacific Telegraph Co.* v. *Philadelphia*, 190 U. S. 160, 162. In *Maine* v. *Grand Trunk Ry. Co.*, 142 U. S. 217, the authority of the *Philadelphia Steamship Company case* was accepted without question, and the decision was justified by the majority as not in any way qualifying or impairing it. The validity of the distinction was what divided the court.

It being once admitted, as of course it must be, that not every law that affects commerce among the States is a regulation of it in a constitutional sense, nice distinctions are to be expected. Regulation and commerce among the States both are practical rather than technical conceptions, and, naturally, their limits must be fixed by practical lines. As the property of companies engaged in such commerce may be taxed, *Pullman's Palace Car Co.* v. *Pennsylvania*, 141 U. S. 18, and may be taxed at its value as it is, in its organic relations, and not merely as a congeries of unrelated items, taxes on such property have been sustained that took account of the augmentation of value from the commerce in which it was engaged. *Adams Express Co.* v. *Ohio State Auditor*, 165 U. S. 194; *S. C.*, 166 U. S. 171; *Fargo* v. *Hart*, 193 U. S. 490, 499. So it has been held that a tax on the property and business of a railroad operated within the State might be estimated *prima facie* by gross income, computed by adding to the income derived from business within the State the proportion of interstate business equal to the proportion between the road over which the business was carried within the State to the total length of the road over which it was carried. *Wisconsin & Michigan Ry. Co.* v. *Powers*, 191 U. S. 379.

Since the commercial value of property consists in the expectation of income from it, and since taxes ultimately, at least in the long run, come out of income, obviously taxes called taxes on property and those called taxes on income or receipts tend to run into each other somewhat as fair value and anticipated profits run into each other in the law of damages. The difficulty of distinguishing them became greater when it was decided, not without much debate and difference of opinion, that interstate carriers' property might be taxed as a going concern. In *Wisconsin & Michigan Ry. Co.* v. *Powers, supra*, the measure of property by income purported only to be *prima facie* valid. But the extreme case came earlier. In *Maine* v. *Grand Trunk Ry. Co.*, 142 U. S. 217, "an annual excise tax for the privilege of exercising its franchise," was levied upon every one operating a railroad in the State, fixed by percentages, varying up to a certain limit, upon the average gross receipts per mile multiplied by the number of miles within the State when the road extended outside. This seems at first sight like a reaction from the *Philadelphia & Southern Mail Steamship Company case.* But it may not have been. The estimated gross receipts per mile may be said to have been made a measure of the value of the property per mile. That the effort of the State was to reach that value and not to fasten on the receipts from transportation as such was shown by the fact that the scheme of the statute was to establish a system. The buildings of the railroad and its lands and fixtures outside of its right of way were to be taxed locally, as other property was taxed, and this excise with the local tax were to be in lieu of all taxes. The language shows that the local tax was not expected to include the additional value gained by the property being part of a going concern. That idea came in later. The excise was an attempt to reach that additional value. The two taxes together fairly may be called a commutation tax. See *Ficklen* v. *Taxing District of Shelby County*, 145 U. S. 1, 23; *Postal Telegraph Cable Co.* v. *Adams*, 155 U. S. 688, 697; *McHenry* v. *Alford*, 168 U. S. 651, 670, 671.

"By whatever name the exaction may be called, if it amounts to no more than the ordinary tax upon property or a just equivalent therefor, ascertained by reference thereto, it is not open to attack as inconsistent with the Constitution." *Postal Telegraph Cable Co.* v. *Adams,* 155 U. S. 688, 697. See *New York, Lake Erie & Western R. R. Co.* v. *Pennsylvania,* 158 U. S. 431, 438, 439. The question is whether this is such a tax. It appears sufficiently, perhaps from what has been said, that we are to look for a practical rather than a logical or philosophical distinction. The State must be allowed to tax the property and to tax it at its actual value as a going concern. On the other hand the State cannot tax the interstate business. The two necessities hardly admit of an absolute logical reconciliation. Yet the distinction is not without sense. When a legislature is trying simply to value property, it is less likely to attempt to or effect injurious regulation than when it is aiming directly at the receipts from interstate commerce. A practical line can be drawn by taking the whole scheme of taxation into account. That must be done by this court as best it can. Neither the state courts nor the legislatures, by giving the tax a particular name or by the use of some form of words, can take away our duty to consider its nature and effect. If it bears upon commerce among the States so directly as to amount to a regulation in a relatively immediate way, it will not be saved by name or form. *Stockard* v. *Morgan,* 185 U. S. 27, 37; *Asbell* v. *Kansas,* 209 U. S. 251, 254, 256.

We are of opinion that the statute levying this tax does amount to an attempt to regulate commerce among the States. The distinction between a tax "equal to" one per cent of gross receipts and a tax of one per cent of the same, seems to us nothing, except where the former phrase is the index of an actual attempt to reach the property and to let the interstate traffic and the receipts from it alone. We find no such attempt or anything to qualify the plain inference from the statute taken by itself. On the contrary, we rather infer from the judgment of the state court and from the argument on behalf of the State

that another tax on the property of the railroad is upon a valuation of that property taken as a going concern. This is merely an effort to reach the gross receipts, not even disguised by the name of an occupation tax, and in no way helped by the words "equal to."

Of course, it does not matter that the plaintiffs in error are domestic corporations or that the tax embraces indiscriminately gross receipts from commerce within as well as outside of the State. We are of opinion that the judgment should be reversed.

*Judgment reversed.*

MR. JUSTICE HARLAN, with whom THE CHIEF JUSTICE, MR. JUSTICE WHITE and MR. JUSTICE McKENNA concurred, dissenting.

In my opinion the court ought to accept the interpretation which the Supreme Court of Texas places upon the statute in question. In other words, it should be assumed that, by imposing upon railroads and corporations owning, operating, managing or controlling any line of railroad in the State, for the transportation of passengers, freight or baggage, an annual tax "*equal* to one per centum of its gross receipts if such line of railroad lies wholly within the State, and if such line of railroad lies partly within and partly without the State, it shall pay a tax *equal* to such proportion of the said one per centum of its gross receipts as the length of the portion of such line within the State bears to the whole length of such line," the State intended to impose only an occupation tax. Such is the construction which the state court places on the statute and that construction is justified by the words used. We have the authority of the Supreme Court of Texas for saying that the constitution of that State authorizes the imposition of occupation taxes upon natural persons and upon corporations, other than municipal, doing business in that State. The plaintiff in error is a Texas corporation, and it cannot be doubted that the State may impose an occupation tax on one of its own corporations,

provided such tax does not interfere with the exercise of some power belonging to the United States.

But it is said that the tax in question, even if regarded as an occupation tax, is invalid, as constituting a direct burden on interstate commerce, the regulation of which belongs to Congress. It is not, in my opinion, to be taken as a tax on interstate commerce in the sense of the Constitution; for its operation on interstate commerce is only incidental, not direct. A State, in the regulation of its internal affairs, often prescribes rules which in their operation, remotely or incidentally, affect interstate commerce. But such rules have never been held as in themselves imposing direct burdens upon such commerce, and on that ground invalid. The State in the present case ascertains the extent of business done by the corporation in the State, and requires an annual occupation tax "equal" to a named per centum of the amount of such business. It does not lay any tax directly upon the gross receipts as such, as was the case in *Philadelphia & Southern Mail Steamship Co.* v. *Pennsylvania*, 122 U. S. 326. In that case the court said: "The tax was levied directly upon the receipts derived by the company from its fares and freights, for the transportation of persons and goods between different States, and between the States and foreign countries, and from the charter of its vessels, which was for the same purpose. This transportation was an act of interstate and foreign commerce. It was the carrying on of such commerce. Here there is no levying upon receipts as such from interstate commerce. The State only measures the occupation tax by looking at the entire amount of the business done within its limits without reference to the source from which the business comes. It does not tax any part of the business because of its being interstate. It has reference equally to all kinds of business done by the corporation in the State. Suppose the State as, under its constitution it might do, should impose an income tax upon railroad corporations of its own creation, doing business within the State, equal to a given per cent of all income received by the corporation from its business, would

the corporation be entitled to have excluded from computation such of its income as was derived from interstate commerce? Such would be its right under the principles announced in the present case. In the case supposed the income tax would, under the principles or rules now announced, be regarded as a direct burden upon interstate commerce. I cannot assent to this view.

If it did not delay an announcement of the court's decision longer, perhaps, than is desirable, I should be glad to go into this subject at large and present such a review of the adjudged cases as would show 'that the views expressed by me are in harmony with previous cases in this court. The present de- cision, I fear, will seriously affect the taxing laws of many States, and so impair the powers of the several States, in mat- ters of taxation, that they cannot compel its own corporations to bear their just proportion of such public burdens as can be met only by taxation. I dissent from the opinion and judgment of the court.

MR. CHIEF JUSTICE FULLER, MR. JUSTICE WHITE and MR. JUSTICE McKENNA concur in this dissent.