27 So.2d 788

**INGALLS IRON WORKS CO. v. CITY OF BIRMINGHAM.**

**6 Div. 353.**

Supreme Court of Alabama.

Oct. 10, 1946.

Rehearing Denied Nov. 21, 1946.

Lange, Simpson, Robinson & Somerville, D. W. Strickland, and W. H. Cole, all of Birmingham, for appellant.

Jas. H. Willis, of Birmingham, for appellee.

LAWSON, Justice.

In 1943 appellant, the Ingalls Iron Works Company, a corporation, was engaged in the manufacturing business in the City of Birmingham, Alabama. Specifically, it was engaged in the fabrication of structural steel, steel plate and steel tanks. Its gross receipts from the sale of products manufactured in said city during 1943 was $10,-683,299.44, of which amount $9,275,633.24 was realized from the sale of manufactured products to purchasers in states other than Alabama.

This suit involves the amount of the license tax due by the Ingalls Iron Works Company for the privilege of carrying on its manufacturing business in the City of Birmingham during 1944.

Schedule 115 of § 1 of the License Code of said city, in effect in 1944, is in pertinent part as follows: "Each person, firm, or corporation conducting a fabricating plant, bridge building plants or building bridges, foundry, pipe shop, radiator plant, machine shop, nut and/or bolt factory or boiler works not connected with railroads, shall pay a license equal to three-fortieths of one per cent on the gross receipts from said business for the year next preceding the current license year with a minimum of $100." It is not contended that the schedule above quoted was not applicable to the type of business in which appellant was engaged.

§ 15 of said License Code provides that no provision of the Code shall be applied so as to impose any unlawful tax or unlawful burden on either interstate commerce or any activity of the state or federal government. § 21 makes it unlawful to engage in any business covered by the Code without first having procured a license, while § 25 provides for a lien for license or privilege tax.

The Ingalls Iron Works Company tendered to the City of Birmingham, as payment for its 1944 license, a check in the sum of $1,055.73, which is three-fortieths of one per cent of the 1943 gross receipts of said business realized from the sale of its manufactured products to customers within the State of Alabama. The City of Birmingham returned this check and made demand for the sum of $8,012.47, which is three-fortieths of one per cent of the 1943 gross receipts of said company realized from the sale of its manufactured products to customers located without the State of Alabama as well as those situated therein.

Appellant paid the amount demanded, but made protest as to that part computed on sales to out-of-state customers. Claim for refund as to the amount paid under protest was made by appellant within six months after payment. Such claim being denied, this suit was instituted within twelve months after such payment was made to recover the sum of $6,956.74, the amount paid on the gross receipts realized from sales to out-of-state customers of products manufactured within the City of Birmingham. § 658, Title 62, Code of 1940.

As amended, the complaint contained four counts. Demurrer was sustained as to all except Count Two, to which count the defendant pleaded the general issue in short by consent in the usual form. The case was submitted to the court without a jury. There was judgment for defendant, from which the plaintiff prosecutes this appeal.

The question for decision is whether under Schedule 115 of § 1 of the License Code, supra, the City of Birmingham could legally require the Ingalls Iron Works Company to pay a license tax for carrying on a manufacturing business in that city, measured in part by the gross receipts received from the sale of its products manufactured in Alabama to purchasers in other states.

▮ Appellant does not contend that the commerce clause of the Constitution of the United States (Article 1, § 8, cl. 3) has been violated. In the case of American Manufacturing Co. v. City of St. Louis, 250 U.S. 459, 39 S.Ct. 522, 523, 63 L.Ed. 1084, decided by the Supreme Court of the United States in 1919, it was held that the commerce clause of the federal Constitution was not contravened by an ordinance of the City of St. Louis, Missouri, which required a manufacturer as a condition of a grant of a license to carry on a manufacturing business in that city, to pay a (license) tax, the amount of which was ascertained by and proportioned to the amount of the sales of the manufactured goods, whether sold within or without the state. We quote from the case last cited as follows:

"No tax has been, or is to be imposed upon any sales of goods by plaintiff in error except goods manufactured by it in St. Louis under a license conditioned for the payment of a tax upon the amount of the sales when the goods should come to be sold. The tax is computed according to the amount of the sales of such manufactured goods, irrespective of whether they be sold within or without the state, in one kind of commerce or another; and payment of the tax is not made a condition of selling goods in interstate or in other commerce, but only of continuing the manufacture of goods in the city of St. Louis.

"There is no doubt of the power of the state, or of the city acting under its authority, to impose a license tax in the nature of an excise upon the conduct of a manufacturing business in the city. Unless some particular interference with federal right be shown, the states are free to lay privilege and occupation taxes. Clark v. Titusville, 184 U.S. 329, 22 S.Ct. 382, 46 L.Ed. 569; City of St. Louis v. United Railways Co., 210 U.S. 266, 276, 28 S.Ct. 630, 52 L.Ed. 1054.

"The city might have measured such tax by a percentage upon the value of all goods manufactured, whether they ever should come to be sold or not, and have required payment as soon as, or even before, the goods left the factory. In order to mitigate the burden, and also perhaps, to bring merchants and manufacturers upon an equal footing in this regard, it has postponed ascertainment and payment of the tax until the manufacturer can bring the goods into market. A somewhat similar method of postponing payment has been pursued for many years by the federal government with respect to the internal revenue tax upon distilled spirits. Rev.Stats., §§ 3251, 3253 [26 U.S.C.A. Int.Rev.Code, § 2800]; Act August 27, 1894, c. 349, § 48, 28 Stat. 509, 563 [26 U.S.C.A. Int.Rev. Code, § 2802].

\* \* \* \* \* \*

"In our opinion, the operation and effect of the taxing ordinance are to impose a legitimate burden upon the business of carrying on the manufacture of goods in the city; it produces no direct burden on commerce in the goods manufactured, whether domestic or interstate, and only the same kind of incidental and indirect effect as that which results from the payment of property taxes or any other and general contribution to the cost of government. Therefore it does not amount to a regulation of interstate commerce."

The Supreme Court of the United States recently denied certiorari (Aponaug Manufacturing Co. v. Stone, Chairman State Tax Commission, et al., 314 U.S. 577, 62 S.Ct. 131, 86 L.Ed. 467) in a case wherein the Supreme Court of Mississippi applied the rule announced in American Manufacturing Co. v. St. Louis, supra. Aponaug Manufacturing Co. v. State Tax Commission, et al., 190 Miss. 805, 1 So.2d 763.

Appellant bases its right to recover in this case on what it terms the "restrictive provision" of § 735, Title 37, Code 1940. The provisions of said section were first enacted in 1907, and grant to all municipalities the power to license any trade, business or occupation not prohibited by the constitution or laws of the state, which may be engaged in or carried on in the city or town, and contains the following provision:

"The license herein authorized as to persons, firms or corporations engaged in business in connection with interstate commerce, shall be confined to that portion within the limits of the state, and where such person, firm or corporation has an office or transacts business in the city or town imposing the license."

It is appellant's contention, as we understand it, that the above-quoted provision prevents a municipality from using the gross receipts realized from interstate sales as a measurement by which to compute the amount of a license tax, irrespective of the fact that the license tax is laid and exacted for the privilege of engaging in a manufacturing business within the municipality, and although measurement of the amount of such manufacturing tax by gross receipts from both interstate and intrastate sales of products manufactured within the city is valid under the commerce clause of the federal constitution, in accordance with the recent decisions of the Supreme Court of the United States.

The argument in support of this contention is that the restriction was written into the law at a time when it was understood that a tax levied on gross receipts from interstate commerce was in violation of the commerce clause irrespective of whether the sales were made by a merchant or manufacturer and that subsequent decisions of the Supreme Court of the United States do not affect the field of operation of such restrictive provisions.

While taxing statutes are to be construed strictly against the government and in favor of the taxpayer, this rule does not take precedence over the fundamental rule that a statute is to be construed in accordance with its real intent and meaning, and not so strictly as to defeat the legislative purpose. National Linen Service Corp. v. State Tax Commission, 237 Ala. 360, 186 So. 478.

The exact legal effect of the commerce clause of the federal Constitution upon the various aspects of commerce between the several states has never been exactly defined. No exact formula has been

or can be devised for determining in all cases whether or not a state or municipal tax is prohibited by the commerce clause of the federal Constitution. The question is inherently a practical one, depending for its decision on the special facts of each case. Neither the legislature nor the courts of this or any other state can define what is or what is not such a burden upon interstate commerce as to constitute a violation of the commerce clause of the federal Constitution. This is the duty and prerogative of Congress and the federal courts. Galveston, H. & S. A. R. Co. v. State of Texas, 210 U.S. 217, 28 S.Ct. 638, 52 L.Ed. 1031; Hump Hairpin Manufacturing Co. v. Emmerson, 258 U.S. 290, 294, 295, 42 S.Ct. 305, 66 L.Ed. 622.

This condition of uncertainty existed prior to the time of the enactment of what is now § 735, Title 37, Code 1940. Any number of decisions of the Supreme Court of the United States had held invalid taxes levied under state statutes and municipal ordinances on the ground that they were a burden upon interstate commerce, but no exact rule was laid down to guide the states and their political subdivisions. Appellant contends that at the time § 735, Title 37, supra, first became a part of our statutory law, the rule was uniform to the effect that a state or municipality could not measure the amount of a license tax by the gross receipts received from interstate commerce. While there are decisions which tend to support such a conclusion, there are others which indicate the contrary. Cf. Galveston, H. & S. A. R. Co. v. Texas, supra; Ficklen v. Taxing District of Shelby County, 145 U.S. 1, 12 S.Ct. 810, 36 L.Ed. 601; State of Maine v. Grand Trunk R. Co., 142 U.S. 217, 12 S.Ct. 121, 163, 35 L.Ed. 994.

The last cited cases are illustrative of the nice distinctions which were made in cases wherein state or municipal taxes were alleged to be in contravention of the commerce clause of the federal Constitution.

We are of the opinion that the purpose of the legislature in incorporating the restrictive provision in what is now § 735, Title 37, Code 1940, was merely to negative expressly any intent that the permissive features of said section were to extend to the taxation of that form of commerce the regulation of which is reserved to Congress. It was an admonition to municipalities to so frame their tax ordinances as to avoid transgression of the commerce clause of the federal Constitution.

No logical reason suggests itself as to why the legislature should have intended to restrict municipalities beyond those limitations imposed by the commerce clause of the federal Constitution.

We do not think the legislature intended to define interstate commerce, which was not within its province, nor are we of the opinion that the legislature intended that the question as to whether or not a business is connected with interstate commerce should be decided on any concept that the legislature might have had as to such business at the time of the passage of the provision of the law now under consideration. Such a construction would not be in keeping with the purpose of the statute as we view it, nor is it reasonable to assume that, in view of the history of the decisions of both state and federal courts relating to the application of the commerce clause of the federal constitution to state and municipal taxation, it was intended that the section have application only to those businesses which had theretofore expressly been held to be engaged in interstate commerce.

We hold that the words "business in connection with interstate commerce" mean that type of business the taxation of which by a municipality transgresses the commerce clause of the federal Constitution. Appellant is not here sought to be taxed for the privilege of engaging in that type of business. American Manufacturing Co. v. St. Louis, supra. Hence the restrictive provision of § 735, Title 37, Code 1940, has no application. Neither the ordinance here under consideration nor its application in this case violates said section.

The judgment of the lower court is due to be and it is affirmed.

Affirmed.

GARDNER, C. J., and FOSTER and STAKELY, JJ., concur.