This appeal concerns the validity of a city ordinance that bases the amount to be paid for a business license on the total gross receipts from the sales of the business both from its facilities inside the city limits and from its facilities outside the city limits. The trial court entered a judgment upholding the ordinance. We reverse and remand.
M Associates, Inc., d/b/a Industrial Electric Supply Company, is an Alabama corporation engaged in the wholesale electrical supply business. The company, which is headquartered in the City of Irondale, sells electrical supplies from its Irondale facility, as well as from its facilities in Mobile; Marietta, Georgia; Nashville, Tennessee; Pascagoula, Mississippi; and Belle Chasse, Louisiana. M Associates does invoicing and billing from its corporate headquarters, through a centralized accounting system. All gross receipts are transmitted to its headquarters in Irondale.
From 1990 to 1994, M Associates calculated its business license taxes based solely on the gross receipts from sales made from its Irondale facility. Based on those calculations, M 
Associates paid $5,072.84 in 1990; $6,050.50 in 1991; $5,173.00 in 1992; $5,223.86 in 1993; and $4,584.20 in 1994. Following an audit in 1994, the City of Irondale notified M Associates that it had not properly calculated its license taxes over the previous five-year period and that it owed $116,223.16 in past-due license taxes and penalties. *Page 593 
The city based that assessment on its Ordinance No. 806-89, entitled "An Ordinance to Prescribe and Fix Licenses for Businesses, Occupations and Professions in the City of Irondale, Alabama."[1] The ordinance applied to "diverse businesses, vocations, occupations, and professions engaged in or carried on in the City of Irondale." M Associates was classified under § 1 (107) of the ordinance, which assessed a license tax against corporations "engaged in the business of offering for sale, taking or soliciting orders for sale, or selling merchandise of any description, including any such products stored in a warehouse for sale, distribution or delivery, whether as owner, dealer, agent or cosignee." M Associates was charged the "basic rate," which was "$100.00 plus an amount equal to 1/10 of 1% of gross receipts in excess of $50,000 during the preceding year." Section 3 (a) of the ordinance provided:
 "Where the amount of a license is based upon gross receipts, unless the contrary clearly appears, the term shall mean the entire, receipts of the business, vocation, occupation or profession engaged in, including all receipts from sales regardless of the place where the sale was solicited, or place where the contract of sale was consummated or the place of delivery, and shall not contemplate any deductions for any purpose not specifically provided for."
(Emphasis added.)
After M Associates questioned the city's authority to tax its sales made from facilities outside the city limits, the city filed an action in the Jefferson County Circuit Court, seeking a judgment for the amount of its assessment. The city also threatened to revoke M Associates' business license if it did not pay the assessment. M Associates paid $92,677.97 to the city, under protest, as payment in full for the taxes the city claimed were due for the years 1990-1994. The city agreed to accept this amount (reserving its right to sue to recover the interest it claimed was owed) and to dismiss its action; M 
Associates filed this present action to recover its payment, plus attorney fees and expenses of litigation, under the Alabama Litigation Accountability Act, Ala. Code 1975, § 12-19-270 et seq. The trial court's order read, in pertinent part, as follows:
 "This case came before the Court for a decision on August 11, 1997, pursuant to a stipulation of the parties filed on July 7, 1997. The stipulation reads as follows:
 "STIPULATION
"Whereas:
 "1. the parties agreed that the evidence before the Court on plaintiff's motion for summary judgment and defendant's opposition thereto demonstrates that there are no issues of material fact to be tried and that only questions of law remain; and
 "2. the sole legal issue to be decided by the Court is whether defendant's tax on plaintiff's total gross receipts from within and without the State of Alabama discriminates against interstate commerce, violating the Commerce Clause and the Due Process Clause of the Fourteenth Amendment of the United States Constitution by unfairly apportioning activity from other states.
 "Now therefore, the parties stipulate that the Court may adjudicate fully this action on the evidence before the Court at this time.
". . .
 "After consideration of all the evidence in this case, the answer to the sole issue is No; therefore, judgment . . . is hereby entered in favor of the defendant."
(Emphasis original.)
Section 11-51-90, Ala. Code 1975, provides in pertinent part:
 "(a) All municipalities shall have the following powers:
 "(1) To license any exhibition, trade, business, vocation, occupation, or profession not prohibited by the Constitution *Page 594 
or laws of the state which may be engaged in or carried on in the city or town.
". . . .
 "(3) To require sworn statements as to the amount of capital invested, value of goods or stocks, or amounts of sales or receipts where the amount of the license is made to depend upon the amount of capital invested, value of goods or stocks, or amount of sales or receipts and to punish any person or corporation for failure or refusal to furnish sworn statements or for giving of false statements in relation thereto.
 "(b) The license authorized by subsection (a) of this section as to persons, firms, or corporations engaged in business in connection with interstate commerce shall be confined to that portion within the limits of the state and where the person, firm, or corporation, has an office or transacts business in the city or town imposing the license.
 "(c) The power to license conferred by this division may be used in the exercise of the police power as well as for the purpose of raising revenue, or both."
(Emphasis added.) Section 11-45-1, Ala. Code 1975, provides:
 "Municipal corporations may from time to time adopt ordinances and resolutions not inconsistent with the laws of the state to carry into effect or discharge the powers and duties conferred by the applicable provisions of this title and any other applicable provisions of law and to provide for the safety, preserve the health, promote the prosperity and improve the morals, order, comfort and convenience of the inhabitants of the municipality, and may enforce obedience to such ordinances."
Section 11-51-90 (b) "was an admonition to municipalities to so frame their tax ordinances as to avoid transgression of the commerce clause of the federal Constitution." Ingalls Iron WorksCo. v. City of Birmingham, 248 Ala. 417, 421, 27 So.2d 788, 791
(1946) (construing Title 37, § 735, Code of 1940, the predecessor to § 11-51-90). Ordinance No. 805-89 specifically recognized that its scope was limited by federal and state law:
 "Section 14. No provisions of this Ordinance shall be applied: (a) so as to impose any unlawful tax or unlawful burden on interstate commerce or on activity of the State or Federal Governments: or (b) in any manner which is repugnant to or violates any provision of the United States or Alabama Constitutions."
Relying on a number of decisions from the United States Supreme Court, including Gwin, White Prince v. Henneford, 305 U.S. 434,59 S.Ct. 325, 83 L.Ed. 272 (1939); Complete Auto Transit, Inc.v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977); and Tyler Pipe Industries, Inc. v. Washington State Department ofRevenue, 483 U.S. 232, 107 S.Ct. 2810, 97 L.Ed.2d 199 (1987), M Associates contends that the ordinance upon which the city's tax assessment is based violated the Commerce and Due Process Clauses of the United States Constitution by authorizing a tax based on the total gross receipts from sales made at its facilities outside the state. Citing Complete Auto Transit, which sets out a four-part test for determining the constitutionality of local taxes on interstate commerce, M Associates argues that a tax of the sort imposed on it by the city can be upheld against a Commerce Clause challenge only "when the tax is applied to an activity with a substantial nexus with the taxing state, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State." 430 U.S. at 279, 97 S.Ct. at 1079.[2] M Associates maintains *Page 595 
that the ordinance runs afoul of the second (fair apportionment) and fourth (fair relation) parts of the Complete Auto Transit
test and, therefore, that it violates § 11-51-90. M 
Associates also contends that the ordinance violates §11-51-90 by authorizing a tax based on the gross receipts from instate sales made at its Mobile facility.
The city contends that the Commerce Clause does not exempt businesses engaged in interstate commerce from paying a reasonable business license tax for the privilege of doing business in the city, provided that interstate commerce is not unduly burdened or discriminated against by the tax. It argues that it had the statutory authority to impose the tax and a concomitant statutory duty to enforce it. The city maintains that the amount of its tax assessment was reasonable when compared to the amount of M Associates' gross receipts over the five years in question (approximately $110,000,000) and when considered in light of the number of services the city provides to all city residents (police protection, fire protection, water service, street maintenance, etc.).
We note at this point that business license ordinances are presumed to be reasonable and that the burden rests upon the business challenging a license tax charged to it to prove that that tax is unreasonable or that the ordinance was illegally adopted or violates the statutory or fundamental law of the United States or the State of Alabama. State Department ofRevenue v. Reynolds Metals Co., 541 So.2d 524 (Ala. 1988).
It is well settled that upon a challenge, a court must evaluate, under the Complete Auto Transit test, whether a local tax is fairly apportioned; it does this by examining the nature of the tax to see whether the tax is "internally and externally consistent." The "internal consistency" test is passed only when the tax is structured so that if every state imposed an identical tax, no multiple taxation would result. In Goldberg v. Sweet,488 U.S. 252, 260-61, 109 S.Ct. 582, 588, 102 L.Ed.2d 607 (1989), the Supreme Court stated:
 "[W]e are mindful that the central purpose behind the apportionment requirement is to ensure that each State taxes only its fair share of an interstate transaction. See, e.g., Container Corp. of America v. Franchise Tax Bd., 463 U.S. 159, 169
[103 S.Ct. 2933, 77 L.Ed.2d 545] (1983). But `we have long held that the Constitution imposes no single [apportionment] formula on the States,' id., at 164 [103 S.Ct. 2933], and therefore have declined to undertake the essentially legislative task of establishing a 'single constitutionally mandated method of taxation.' Id., at 171 [103 S.Ct. 2933]; see also Moorman Mfg. Co. v. Bair, 437 U.S. 267, 278-280 [98 S.Ct. 2340, 57 L.Ed.2d 197] (1978). Instead, we determine whether a tax is fairly apportioned by examining whether it is internally and externally consistent. [American Trucking Ass'ns, Inc. v. Scheiner, 483 U.S. 266, 285
[107 S.Ct. 2829, 97 L.Ed.2d 226] (1987)]; Armco Inc. v. Hardesty, 467 U.S. 638, 644
[104 S.Ct. 2620, 81 L.Ed.2d 540] (1984); Container Corp., supra, at 169-170 [103 S.Ct. 2933].
 "To be internally consistent, a tax must be structured so that if every State were to impose an identical tax, no multiple taxation would result. 463 U.S., at 169
[103 S.Ct. 2933]. Thus, the internal consistency test focuses on the text of the challenged statute and hypothesizes a situation where other States have passed an identical statute. We conclude that the Tax Act is internally consistent, for if every State taxed only those interstate phone calls which are charged to an in-state service address, only one State would tax each interstate telephone call."
More recently, in Oklahoma Tax Comm'n v. Jefferson Lines, Inc.,514 U.S. 175, 115 S.Ct. 1331, 131 L.Ed.2d 261 (1995), surveying its previous decisions dealing with the Commerce Clause's limitations on state taxation *Page 596 
of interstate commerce, the Court reaffirmed the long-standing principle that a state tax calculated on the basis of the gross receipts of a business must not violate the prohibition against multiple state taxation that was recognized in earlier cases such as Gwin, White Prince, Inc. v. Henneford, supra.
In Gwin, White Prince, the sole question was whether a Washington privilege tax measured by the gross receipts of the appellant from its business of marketing fruit shipped from Washington to different places of sale in various states and in foreign countries was an unconstitutional burden on interstate commerce. The Court held that it was, and reversed the judgment of the Washington Supreme Court:
 "Sections 4 (e), 5 (g), (m) of Tit. II, c. 180 of Washington Laws of 1935 lay `a tax for the act or privilege of engaging in business activities' upon every person (including corporations) `engaging within this state in any business activity,' with exceptions not now material, at the rate of one-half of 1% of the `gross income of the business.' As the record discloses, appellant has a place of business in the state of Washington from which it carries on its operations in marketing, in other states and foreign countries, apples and pears grown in Washington and Oregon. Its entire business is that of marketing agent for fruit growers and growers' cooperative organizations in those states. As such it makes sales and deliveries of the fruit in other states and in foreign countries, collects the sales prices and remits the proceeds to its principals after deducting transportation charges, certain expense allowances and its own compensation. In the course of the business the fruit is shipped from the states of origin . . . to other states and foreign countries, sometimes directly to the purchasers, but more often it is consigned to appellant at extra-state points from which it is diverted by appellant to purchasers who buy the fruit while in transit, or where it is stored pending sale. Representatives of appellant at numerous points without the state negotiate sales of the fruit on behalf of appellant and on its approval execute written contracts of sale, effect delivery of the shipments to purchasers, collect the purchase price and remit it to appellant in Washington, where it is accounted for to the shippers. . . .
". . . .
 "The Supreme Court of Washington, conceding that the shipment of the fruit from the state of origin to points outside, and its sale there, involve interstate commerce, held nevertheless that appellant's activities in Washington in promoting the commerce were a local business, subject to state taxation as is other business carried on in the state, and it sustained the present levy, against attack under the commerce clause, as a tax upon those activities, citing Ficklen v. Shelby County Taxing District, 145 U.S. 1 [12 S.Ct. 810, 36 L.Ed. 601 (1892)], and American Manufacturing Co. v. [City of] St. Louis, 250 U.S. 459 [39 S.Ct. 522, 63 L.Ed. 108411 (1919)].
 "We need not stop to consider which, if any, of appellant's activities in carrying on its business are in themselves transportation of the fruit in interstate or foreign commerce. For the entire service for which the compensation is paid is in aid of the shipment and sale of merchandise in that commerce. Such services are within the protection of the commerce clause, Robbins v. Shelby County Taxing District, 120 U.S. 489 [7 S.Ct. 592, 30 L.Ed. 694
(1887)]; Caldwell v. [State of] North Carolina, 187 U.S. 622 [23 S.Ct. 229, 47 L.Ed. 336 (1903)]; Real Silk [Hosiery] Mills v. Portland, 268 U.S. 325 [45 S.Ct. 525, 69 L.Ed. 982 (1925)]; and the only question is whether the taxation of appellant's gross receipts derived from them is such an interference with interstate commerce as to bring the tax within the constitutional prohibition.
 "While appellant is engaged in business within the state, and the state courts have sustained the tax as laid on its activities there, the interstate commerce service which it renders and for which the taxed compensation is paid is not wholly performed within the state. A substantial part of it is outside the state where sales are negotiated and written contracts of sale are executed, and where deliveries *Page 597 
and collections are made. Both the compensation and the tax laid upon it are measured by the amount of the commerce — the number of boxes of fruit transported from Washington to purchasers elsewhere; so that the tax, though nominally imposed upon appellant's activities in Washington, by the very method of its measurement reaches the entire interstate commerce service rendered both within and without the state and burdens the commerce in direct proportion to its volume.
 "The constitutional effect of a tax upon gross receipts derived from participation in interstate commerce and measured by the amount or extent of the commerce itself has been so recently and fully considered by this Court that it is unnecessary now to elaborate the applicable principles. Western Live Stock v. Bureau of Revenue, 303 U.S. 250 [58 S.Ct. 546, 82 L.Ed. 823
(1938)]; [J.D.] Adams Manufacturing Co. v. Storen, 304 U.S. 307 [58 S.Ct. 913, 82 L.Ed. 1365 (1938)]; cf. Coverdale v. Arkansas-Louisiana Pipe Line Co., 303 U.S. 604 [58 S.Ct. 736, 82 L.Ed. 1043 (1938)].
 "It has often been recognized that 'even interstate business must pay its way' by bearing its share of local tax burdens, Postal Telegraph-Cable Co. v. Richmond, 249 U.S. 252, 259 [39 S.Ct. 265, 266, 63 L.Ed. 590 (1919)], and that in consequence not every local tax laid upon gross receipts derived from participation in interstate commerce is forbidden. See Western Live Stock v. Bureau of Revenue, supra [at], page 254 [255-61, 58 S.Ct. at page 548] et seq., and cases cited. But it is enough for present purposes that under the commerce clause, in the absence of Congressional action, state taxation, whatever its form, is precluded if it discriminates against interstate commerce or undertakes to lay a privilege tax measured by gross receipts derived from activities in such commerce which extend beyond the territorial limits of the taxing state. Such a tax, at least when not apportioned to the activities carried on within the state, see Maine v. Grand Trunk Ry. Co., 142 U.S. 217 [217, 12 S.Ct. 121, 163, 35 L.Ed. 994 (1891)]; Wisconsin M. Ry. Co. v. Powers, 191 U.S. 379 [24 S.Ct. 107, 48 L.Ed. 229
(1903)]; Cudahy Packing Co. v. Minnesota, 246 U.S. 450 [38 S.Ct. 373, 62 L.Ed. 827
(1918)]; United States Express Co. v. Minnesota, 223 U.S. 335 [32 S.Ct. 211, 56 L.Ed. 459 (1912)]; cf. Ficklen v. Shelby County Taxing District, supra; American Manufacturing Co. v. St. Louis, supra, burdens the commerce in the same manner and to the same extent as if the exaction were for the privilege of engaging in interstate commerce and would, if sustained, expose it to multiple tax burdens, each measured by the entire amount of the commerce, to which local commerce is not subject.
 "Here the tax, measured by the entire volume of the interstate commerce in which appellant participates, is not apportioned to its activities within the state. If Washington is free to exact such a tax, other states to which the commerce extends may, with equal right, lay a tax similarly measured for the privilege of conducting within their respective territorial limits the activities there which contribute to the service. The present tax, though nominally local, thus in its practical operation discriminates against interstate commerce, since it imposes upon it, merely because interstate commerce is being done, the risk of a multiple burden to which local commerce is not exposed. Adams Manufacturing Co. v. Storen, supra
[at], pages 310, 311 [58 S.Ct. at page 915]; cf. Fargo v. [Stevens] Michigan, 121 U.S. 230 [7 S.Ct. 857, 30 L.Ed. 888
(1887)]; Philadelphia Southern [M.]S.S. Co. v. Pennsylvania, 122 U.S. 326
[7 S.Ct. 1118, 30 L.Ed. 1200 (1887)]; Galveston, H. S.A Ry. Co. v. Texas, 210 U.S. 217, 225, 227 [28 S.Ct. 638, 639, 640, 52 L.Ed. 1031
(1908)]; Meyer v. Wells, Fargo Co., 223 U.S. 298 [32 S.Ct. 218, 56 L.Ed. 445
(1912)]; Crew Levick Co. v. Pennsylvania, 245 U.S. 292 [38 S.Ct. 126, 62 L.Ed. 295
(1917)]; Fisher's Blend Station v. State Tax Commission, 297 U.S. 650
[56 S.Ct. 608, 80 L.Ed. 956 (1936)]; see Western Live Stock v. Bureau of Revenue, supra, [at] page 260 [58 S.Ct. at page 550]. Such a multiplication of state taxes, each measured *Page 598 
by the volume of the commerce, would reestablish the barriers to interstate trade which it was the object of the commerce clause to remove. Unlawfulness of the burden depends upon its nature, measured in terms of its capacity to obstruct interstate commerce, and not on the contingency that some other state may first have subjected the commerce to a like burden.
". . . .
 "For more than a century, since Brown. v. Maryland, 12 Wheat. 119, 445 [6 L.Ed. 678 (1827)], it has been recognized that under the commerce clause, Congress not acting, some protection is afforded to interstate commerce against state taxation of the privilege of engaging in it. Webber v. [State of] Virginia, 103 U.S. 344
[26 L.Ed. 565 (1880)]: [Western Union] Telegraph Co. v. Texas 105 U.S. 460 [26 L.Ed. 1067
(1881)]; Robins v. Shelby County Taxing District, supra; Leloup v. Mobile, 127 U.S. 640 [8 S.Ct. 1380, 32 L.Ed. 311 (1888)]; Brennan. v. [City of] Titusville, 153 U.S. 289 [14 S.Ct. 829 38 L.Ed. 719 (1894)]; International Text Book Co. v. Pigg, 217 U.S. 91 [30 S.Ct. 481, 54 L.Ed. 678 (1910)]; Fisher's Blend Station. v. State Tax Commission, supra; Adams Manufacturing Co. v. Storen, supra. For half a century, following the decision in Philadelphia Southern [M.] S.S. Co v. Pennsylvania, 122 U.S. 326; [7 S.Ct. 1118, 30 L.Ed. 1200
(1887)], it has not been doubted that state taxation of local participation in interstate commerce, measured by the entire volume of the commerce, is likewise foreclosed."
306 U.S. at 435-41, 59 S.Ct. 325 (reversing 193 Wn. 451,75 P.2d 1017 (1938)).
Based on these statements in Gwin, White Prince, we conclude that the license tax authorized by Ordinance No. 805-89 was not "internally consistent," as that term has been defined by the United States Supreme Court, because, if local governments in other states in which M Associates does business — Georgia, Louisiana, Mississippi, and Tennessee — were to impose license taxes based on gross receipts from sales made within their respective jurisdictions, then multiple state taxation of interstate commerce would result. In other words, if M 
Associates were to sell a certain piece of electrical equipment from its facility in Marietta, Georgia, that one sale would be subject to taxation in both Georgia and Alabama. A license tax ordinance that creates the possibility of such multiple taxation does not satisfy the "fair apportionment" part of the CompleteAuto Transit test and, therefore, violates the Commerce Clause. In this respect we note, contrary to the city's assertions, that the Supreme Court has "categorically rejected" the necessity of a showing that any other state has actually imposed a license tax based on gross receipts.[3] See Tyler Pipe Industries, Inc. v.Washington State Department of Revenue, supra; Armco Inc. v.Hardesty, 467 U.S. 638, 104 S.Ct. 2620, 81 L.Ed.2d 540 (1984);American Trucking Ass'ns, Inc. v. Scheiner, 483 U.S. 266,107 S.Ct. 2829, 97 L.Ed.2d 226 (1987). We hold, therefore, that Ordinance No. 805-89, insofar as it assessed a license tax based on M Associates' gross receipts from out-of-state sales, violated the Commerce Clause.[4] See Oklahoma Tax Comm'n v.Jefferson Lines, Inc., supra, at 185, 115 S.Ct. 1331 ("A failure of internal consistency *Page 599 
shows as a matter of law that a State is attempting to take more than its fair share of taxes from the interstate transaction, since allowing such a tax in one State would place interstate commerce at the mercy of those remaining States that might impose an identical tax.").
The record does not indicate that the issue whether Ordinance No. 805-89 violated § 11-51-90 by authorizing a tax based on the gross receipts from sales made at M Associates' Mobile facility was presented to the trial court as part of the stipulation of the parties; therefore, that issue is not properly before this Court.[5] In any event, we note that this Court has held that a city "can impose on businesses located within its corporate limits a license fee based upon the gross receipts of those businesses despite the fact that some of those receipts are derived from transactions conducted outside the city's corporate limits." See City of Tuscaloosa v. Tuscaloosa Vending Co.,545 So.2d 13, 14 (Ala. 1989):
 "The facts were stipulated to by the parties. Plaintiffs in No. 87-454 are Tuscaloosa Vending Company, Inc., and Kyle Office Supply, Inc.; both are businesses located within the corporate limits of Tuscaloosa. Both do business within the city, but they also do business outside the city's corporate limits and outside its police jurisdiction. The plaintiffs in No. 87-455 are a number of pest control companies that are located within Tuscaloosa and that do business both within and outside the city's jurisdiction.
 "Tuscaloosa has an ordinance that imposes a business license fee based upon the gross receipts of a business, and that ordinance defines 'gross receipts' to include the total receipts of the business regardless of the place where the sale or service occurs and regardless of the place of delivery. Each plaintiff can accurately measure its receipts and can divide them between those derived within the city limits of Tuscaloosa, those derived outside the city limits but within the police jurisdiction, and those derived outside both the corporate limits and the police jurisdiction.
 "In the trial court, the plaintiffs challenged only the authority of the city to impose a license fee based upon gross receipts. The trial court ruled in favor of the plaintiffs.
 "We are of the opinion that this case is controlled by our decision in City of Birmingham v. Stegall Co., 439 So.2d 91 (Ala. 1983), wherein we upheld the City of Birmingham's license tax, which was based upon gross receipts, including receipts from business carried on outside the corporate limits. We stated:
 "'We now address the companies' argument that Classification 69 is invalid and unconstitutional because it provides for double taxation and impermissibly authorizes the levy of a revenue tax on business not carried on within the corporate limits of Birmingham. The trial court disagreed, citing this court's decision in Standard Oil Co. v. City of Selma, 216 Ala. 108, 112 So. 532 (1927), as authority for its holding. We think the trial court was correct.'
"439 So.2d at 93.
 "The plaintiffs set forth a number of policy reasons why their interpretation of the city's licensing authority is the more equitable one; they argue that hardships will occur to a company that is based in one municipality but does business in other municipalities that also base their license fees on gross receipts. This Court is aware that a number of municipalities in this state are contiguous and that many have overlapping police jurisdictions. There are reasonable policy arguments on both sides of this issue; however, the Legislature is the body that must choose between such conflicting policy considerations. This Court has held that a license fee such as this one is authorized by the statutes; any decision to alter that grant *Page 600 
of authority must be made by the Legislature.
 "We are not persuaded that the reasoning of City of Birmingham and Standard Oil is incorrect. Therefore, the judgment of the trial court in this case is reversed, and this cause is remanded for proceedings not inconsistent with this opinion."
Tuscaloosa Vending controls the question whether a city can base its business license tax on the gross receipts from sales made by a business outside the city limits and the police jurisdiction.
For the foregoing reasons the judgment is reversed and the cause is remanded.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, ALMON,* SHORES, COOK, SEE, and LYONS, JJ., concur.
[1] The city repealed Ordinance No. 805-89 effective January 1, 1995, and replaced it with an ordinance that did not base license taxes on a business's total gross receipts (Ordinance No. 4-1194). However, effective January 1, 1998, the city returned to a business license tax based on total gross receipts (Ordinance No. 6-1197).
[2] The United States Supreme Court has on a number of occasions considered whether state taxes violate the Commerce Clause. The wavering doctrinal lines of the Court's pre-Complete Auto Transit cases reflect the tension between two competing concepts: the view that interstate commerce enjoys a "free trade" immunity from state taxation; and the view that businesses engaged in interstate commerce may be required to pay their own way. Complete Auto transit sought to resolve this tension by specifically rejecting the view that the states cannot tax interstate commerce, while at the same time imposing limits on state taxation of interstate commerce. The purpose of the Complete Auto Transit test was to establish a consistent and rational method of inquiry focusing on the practical effect of a challenged tax. See Goldberg v. Sweet 488 U.S. 252, 259-60,109 S.Ct. 582, 102 L.Ed.2d 607 (1989), and the cases cited therein. Since the Complete Alto Transit decision, the Supreme Court has applied its four-part test on numerous occasions. We have applied it as well. See, e.g. White v. Reynolds Metals Co. 558 So.2d 373
(Ala. 1989); Ex parte Fleming Foods of Alabama Inc.,648 So.2d 577 (Ala. 1994).
[3] M Associates' attorney indicated during the oral argument or this case that the record was silent as to wheather any other state has imposed a gross-receipts-based license tax on M 
Associates. Although the record does not appear to be completely silent, it is by no means clear. For example, Teresa Stowe, a accounting manager and controller with M Associates, testified by deposition:
 "Q Okay. Which of the cities and the offices that you had under your control paid a license based on gross receipts?
 "A. To the best of my knowledge, the Mobile office did, the Marietta office did. I don't believe the Pascagoula office did. I never examined the licenses for Belle Chasse. At one point the Memphis license was. I do not believe that the Nashville license was based on gross receipts.
Walter E. Mason, the president of the company, testified by deposition that he was not aware that the Marietta, Georgia, business license as based on gross receipts.
[4] In light of our holding that the ordinance did not pass constitutional muster under the "internal consistency" test, we pretermit any discussion of M Associates' other arguments concerning the constitutionality of the ordinance.
[5] Also not properly before this Court is the issue whether M Associates is entitled to an award of attorney fees and expenses under the Alabama Litigation Accountability Act. It does not appear that that issue was presented to the trial court; even if it was the trial court, because or its holding, never reached it.
* Although Justice Almon was not present at oral argument in this case, he has listened to the tape of oral argument.